HEISS, Archbishop, etc., vs. VOSBURG and others.

*January 30 — February 19, 1884.*

*(1) Trusts: Church property held by Roman Catholic bishop: Trespass by members of church. (2) Possession: Court and jury. (3) Temporary injunction: Discretion.*

1. Church property owned by a college corporation was conveyed for the nominal consideration of one dollar, by a deed absolute on its face, to a Roman Catholic bishop, and was by him devised to his successor. Funds and materials had been contributed by members of the congregation, prior to the conveyance, for the erection of the building, and, afterwards, to repair and enlarge it; but there was no evidence that the consideration for the conveyance was paid by them. *Held* that, even if the property was a gift to the bishop to be held by him under the rules and regulations of the Roman Catholic church for the benefit of the congregation which might worship there, still such congregation had no right, against his protest, to tear down the church edifice for the purpose of repairing or rebuilding it.

2. A priest being in charge of the church as the agent of the bishop, the possession of the building was, as a matter of law, in the bishop, although the congregation worshiped in the building and paid the salary of the priest and the expense of keeping the property in repair and maintaining services, and although a committee of trustees aided the priest in the management of the temporalities of the church.

3. The dissolution of a temporary injunction in an action for a trespass to realty, is *held* not to have been an abuse of discretion, although the plaintiff had a good cause of action for damages.

APPEALS from the Circuit Court for *Grant* County.

The case is stated in the opinion.

For the plaintiff there were briefs signed by *A. W. & W. E. Bell*, by *A. W. Bell*, and by *P. A. Orton*, and the cause was argued orally by *Mr. Orton* and *Mr. A. W. Bell*.

For the defendants there was a brief by *Carter & Cleary*, and the cause was argued orally by *Mr. Carter*.

COLE, C. J. The counsel on both sides treat this case as a legal action, as it doubtless is. The plaintiff claims to be the owner of, and in the peaceable possession of, certain real estate in Grant county, on which there is a church building. He alleges that the defendants have unlawfully entered upon these premises, and have torn down and removed the building thereon, and are engaged in digging up and removing the soil for the purpose of laying the foundation for a new building, which they threaten to erect, against his wish and protests. He alleges that the execution of these threats by the defendants will work a great and irreparable injury to him. He claims that he has been damaged to the amount of $5,000 by the wrongful acts of defendants, which damages he seeks to recover; and he asks for a temporary injunction to restrain them from further interfering with his possession, and from digging up and removing the soil. A temporary injunction was granted on the complaint, which was subsequently dissolved on the coming in of the answer and other pleadings. The case then proceeded to trial on the merits, and the plaintiff had judgment for $200 damages. The plaintiff appealed from the order dissolving the injunction, and the defendants appealed from the final judgment. The latter appeal is first in order upon the calendar, and will therefore be first considered.

For the purpose of proving title and possession, the plaintiff gave in evidence a warranty deed of the premises, from the officers of Sinsinawa Mound College, to John

Martin Henni, Bishop of Milwaukee, dated June 21, 1866, which was properly witnessed, acknowledged, and recorded. Also, a certified copy of the last will and testament of John Martin Henni, which had been admitted to probate in Milwaukee county, in and by which the testator devised and bequeathed all of his real and personal estate to the plaintiff. The plaintiff further proved that some time in August, 1880,— long prior to the commission of the acts complained of,— he sent one Theodore Jacobs, a Catholic priest, as his agent, to Sinsinawa Mound, to take charge of the church,— which is known as St. Dominic's church,— and to perform the duties of a Catholic priest for the congregation which worshiped at that place. It is admitted that the defendants are Roman Catholics, were and had been for some time members of this congregation, and accustomed to worship at the church. It is also admitted that the salary of the priest, the repairs of the church building, and the necessary expenses of maintaining religious services at the church, were defrayed by the voluntary contributions of the members of the congregation. The defendants claim that the church building was originally erected by funds and materials furnished by the congregation, and that it has been practically under the control of trustees chosen by the congregation since 1866. They further claim that they represent a majority of the congregation, who are in favor of taking down the old building, because it has become dangerous and unfit for use, and erecting a new one on the same site. They are acting as a building committee, and justify their acts in tearing down the church edifice on the ground that the deed to Bishop Henni was really in trust for the use and benefit of St. Dominic's church. In other words, they claim that the members of the congregation of St. Dominic's church are the beneficial owners of the property and in possession; therefore, that they have a right to tear

down the old building and erect a new one in its place, to be used for religious services, even as against the will and consent of the plaintiff.

We, however, fail to find evidence in the case which sustains the claim of the defendants that the members of St. Dominic's church are the equitable or beneficial owners of this property. In the first place it is to be observed that the deed from the Sinsinawa Mound College to John Martin Henni is absolute in terms and purports to convey the premises to the grantee, his heirs and assigns, in fee simple. There is nothing on the face of the instrument which warrants the assumption that it was intended to create a trust of any kind. The legal title to this real estate appears to have been in the corporation prior to 1866, complete and perfect. There is nothing shown which tended in any way to qualify or impair this title. The entire legal and equitable estate seems to have been in the college corporation. It is doubtless true that funds and materials were contributed by members of the St. Dominic church to aid in the erection of the building at first, and to enlarge and repair it from time to time. But we cannot presume from the evidence that the donors acquired any beneficial interest in the property in consequence of their contributions. It was still the absolute property of the college corporation when conveyed. But while this conveyance from Sinsinawa Mound College was absolute, still it is insisted that the facts and circumstances attending the transaction present a clear case for raising a trust by implication of law in favor of the congregation of St. Dominic's church. It is said, though the property was deeded to John Martin Henni, and by him devised to the plaintiff, nominally in fee, still it was actually in trust for the use of the particular congregation worshiping there, for whose benefit the plaintiff, by the laws of the Catholic church, is required to hold it, and transmit it to his successor in office.

In this case we are not called upon to determine whether the plaintiff is the absolute owner of the property, subject to no trusts, so that he can sell and dispose of it as his own. It may be assumed that he could not do this; that he holds the property for the use of the Catholic church, though the title is apparently absolute in him by the conveyance. We shall confine our decision to the case before us. The question here is, Had the defendants the right, whether representing the majority, or acting in behalf of the entire congregation of St. Dominic's church, to enter upon the premises and destroy the church building against the plaintiff's protest, and, in doing so, were they innocent of any trespass? We cannot see any principle of law or equity upon which such a right can be based. For, in order to justify the acts of the defendants, they should really have been the owners of the church building, having full power and dominion over it. It is attempted to raise a trust in favor of the members of the congregation on the ground that they paid the college corporation a valuable or pecuniary consideration for the deed to Bishop Henni. But there is no proof that any consideration was paid by any one for that conveyance. The deed itself states that it was given in consideration of one dollar paid by Bishop Henni. The probability is that it was a gift by the college to the bishop to be held by him under the rules and regulations of the Catholic church for the use of the Catholic congregation which might worship there. But this would not make the persons of that faith, who happened for the time being to attend worship at St. Dominic's church, cestui-que-trusts, or equitable owners, in such a sense that they could destroy the building without the consent of the plaintiff.

The learned circuit court seemed to be of the opinion, if the deed had been made by the college corporation to Bishop Henni for a consideration paid by the members of the congregation of St. Dominic's church, that no trust would re-

sult in favor of such congregation, because forbidden by the statute of uses and trusts. In the absence of all fraud, accident, or mistake, in executing the conveyance in the form it was made, it is difficult to escape such a conclusion. But, as we have said, there is not a particle of evidence which tends to show that the conveyance was made to Bishop Henni in consideration of anything paid, or to be paid, by the congregation of St. Dominic's church. Nor do we perceive that the rights of the defendants are strengthened because, originally, members of the congregation made contributions in money and materials to erect, enlarge, and improve the church building while it was the property of the college corporation. Suppose the same persons had made contributions for erecting the college buildings, would they not have had the same rights in those buildings that they had in the church edifice? So far as equities arise from donations made for these different objects, they would seem to be the same in the one case as in the other. But, as we have said, the legal and equitable title was in the college corporation when the conveyance was made in 1866, and there is no act or fact shown attending the execution of that deed which makes the defendants the beneficial owners of the property so as to give them the right to tear it down. Nor would it be competent to show by parol evidence that Bishop Henni verbally agreed, when he took the conveyance, that the members of the congregation should be the real owners, providing they would keep the building in repair, and pay all expenses of maintaining religious services in the same. This, in effect, would be to prove an interest in land, or a trust created by parol. And upon that question nothing more need be said than to refer to the very clear and able opinion of Mr. Justice Paine, in *Adm'rs of Rasdall v. Rasdall*, 9 Wis., 380. But, further, if it were competent to prove such an interest in land or declaration of trust by parol, it is sufficient to say that, really, no evidence was offered or given which would establish these facts.

The decrees adopted by the council of bishops at Balti-more, which contain the rules and laws of the Catholic church in respect to the tenure and transmission of property conveyed to the bishops for religious uses, were given in evidence. We find nothing in these rules which in any way aids the case of the defendants. It may be that the court can look into these decrees to ascertain whether the plaintiff owns this property absolutely or whether he holds it subject to a trust. Be that as it may, certain it is the plaintiff does not claim the right to treat this property as his own per-sonal estate. He fully admits that he holds it under the rules of the church for the use of the congregation. But it is not necessary to consider the effect of these ecclesiastical regulations, because they do not in any degree justify the acts of the defendants. They do not show that the mem-bers of the congregation are the *cestui-que-trusts* or benefi-cial owners, so that they have the right to tear down the building without the plaintiff's consent. In any view which we have been able to take of the case the acts of the de-fendants are unlawful. They are simply wrong-doers. True, they say that the old church edifice was out of repair and entirely unfit for use; that a majority of the congrega-tion desired to erect a new building on the old site, and they were executing their wishes in what they did. But this affords no legal justification for tearing down the build-ing against the protests of the plaintiff. For neither they nor the congregation had any such interest in or right to the property as would warrant the exercise of any such acts of ownership over it. We are not called upon to more accu-rately define the rights of the parties in respect to the property. Whether, if the plaintiff should attempt to mis-appropriate it or convert it to his own use, the members of the congregation could prevent his doing so, is a question which may be left for decision when it shall arise. It is sufficient for this case to say that the legal title is in the plaintiff, and he has not attempted to divert it from the use

of the church. When, therefore, the defendants interfered with it they were guilty of a trespass.

It is said the court should have submitted the question to the jury whether the congregation or the plaintiff was in possession of the building. But we think the court was right in deciding as a matter of law that the plaintiff was in possession. It appears to us he had actual possession through his agent, Theodore Jacobs, whom he had sent to take charge of the church and to perform the functions of his priestly office. The defendants were members of the congregation, and worshiped in the church. And it seems that the salary of the priest, and all the incidental expenses of keeping the church in repair, and maintaining religious services, were paid by contributions from the congregation. A committee of trustees also aided the priest in the management of the temporalities of the church. But all these facts fail to show that the possession of the property was in the congregation. There was no error, therefore, in directing a verdict for the plaintiff. The amount of damages which the plaintiff was entitled to recover, if anything, was a matter of stipulation.

We are disposed to affirm the order dissolving the temporary injunction. The continuance of the injunction was, in a certain sense, discretionary. The circuit court may have thought it was not necessary to protect the rights of the plaintiff; that he would sustain no irreparable injury by the threatened trespass. At all events, whatever considerations may have controlled the judgment of the circuit court, certainly there was no abuse of discretion in dissolving the injunction on the pleadings.

It follows that the judgment on the first appeal must be affirmed. The order on the second appeal is also affirmed.

*By the Court.*— Ordered accordingly.