[S. F. No. 14316. In Bank.—December 31, 1931.]

HALSEY L. RIXFORD et al., Petitioners, v. FRANK C. JORDAN, as Secretary of State, etc., Respondent.

W. F. Williamson, Wallace & Vaughn and Lauder W. Hodges for Petitioners.

U. S. Webb, Attorney-General, Ralph O. Marron, Deputy Attorney-General, and McCutchen, Olney, Mannon & Greene for Respondent.

SEAWELL, J.—Petition for a writ of *mandamus* to compel the Secretary of State, upon his refusal to do so, to file articles of incorporation presented by the petitioners as incorporators of a proposed corporation under the name and style of California Shredded Foods Co., Ltd. Respondent filed a general demurrer to the petition and at the same time filed his answer. Petitioners have demurred

specifically to paragraphs VI to XVI, both inclusive, of said answer on the grounds of uncertainty and lack of directness and completeness of said allegations and also on the ground that the matters therein contained do not constitute an answer or defense to the relief sought by the petition.

On April 20, 1931, petitioners presented to respondent as Secretary of State, at his office at the city of Sacramento, this state, their proposed articles of incorporation, accompanied by the proper filing fee, and in every respect complying with the requirements of the statute in such cases made and provided, and which were entitled to be filed unless said articles of incorporation violated the provisions of section 296 of the Civil Code (Stats. 1929, p. 1263), by setting forth a name which was likely to mislead the public or which was the same as, or resembled so closely as to tend to deceive (1) the name of a domestic corporation, or (2) the name of a foreign corporation which was authorized to transact intrastate business in this state. Said statute further provides that the use by a corporation of a name in violation of this section may be enjoined notwithstanding its articles may have been filed by the Secretary of State.

Respondent in a letter addressed to the attorneys of petitioners, dated April 20, 1931, in stating his reasons for refusing to file said articles of incorporation placed them in the main on untenable grounds. In his answer, however, he set forth the reasons for his refusal, which, if well founded, would constitute a justification of his action even though they were tardily made. Under a similar state of facts, we said in *Bank of Italy* v. *Johnson*, 200 Cal. 1 [251 Pac. 784], that, although the reasons assigned by respondent superintendent of banks in attempting to justify his refusal to issue certain permits for the establishment of branch banks within the city of Los Angeles were insufficient, nevertheless such untenable reasons did not preclude him from setting up additional and valid reasons for such refusal. What is there said is not to be taken as authority for including in the instant case the historical and discursive allegations touching the founding, development and widely extended activities of the National Biscuit Company, a foreign corporation authorized to do business in this state, and its many junior allied and subsidiary corporations, or

the extensive plans of advertisements which it has adopted, or the methods of preparing, packing and marketing the outputs of said corporation, or the numerous patents issued thereto and trademarks which have been filed, or the large variety of other subjects included in respondent's answer beginning with paragraph VI and concluding with paragraph XVI thereof, the last of which has to do with the alleged desires, designs and purposes of William E. Williams and Thomas Allan Box. All of said matter is extraneous to the issue presented by this proceeding and affords no tenable reason for the refusal of respondent, a ministerial officer, to file the articles of incorporation as tendered. The proceeding is a direct one brought by certain named citizens and residents of this state who have voluntarily associated themselves together to organize a domestic corporation, with its principal place of business located in the city and county of San Francisco, to compel a public officer to perform an act which the law specially enjoins upon him as a duty resulting from his office. (Sec. 1085, Code Civ. Proc.) The purposes, among others set forth, for which petitioners desire to incorporate are to "manufacture, produce, prepare for market, buy, sell, import, export, distribute and generally deal in, food products and materials of all classes and descriptions in the state of California. To manufacture, purchase or otherwise acquire goods, wares, merchandise and personal property of every class and description and to hold, own, sell, and otherwise dispose of, trade, deal in and with the same"; also to purchase, lease, buy or otherwise acquire real property and dispose of the same, and to carry on manufacturing, distributing or any other business auxiliary to the objects or purposes of the corporation. ■ The business of the proposed corporation, as shown upon the face of its articles of incorporation, is strictly lawful and is agreeable to the commercial and business policy of this state. No other person or corporation, notwithstanding respondent's claim to the contrary, was a necessary or proper party to the proceeding, which was between the petitioners and the public officer. The business intentions of petitioners, whose names appear in proper form upon the articles which set out the extent of their respective interests, cannot be questioned by the Secretary of State. It would be no concern of his

whether the persons making the application for filing had a contract to dispose of their interests or shares of stock immediately upon the filing of said letters. While there is no reason to believe that such an arrangement existed in the instant case, doubtless the existence of such a plan is not unusual in the preliminary organization of corporations. It is of no importance. Neither would it have been a matter of concern to the Secretary of State if the names William E. Williams (who seems to have been an early pioneer in the manufacture of shredded wheat products) and Thomas Allan Box, both of whom are alleged to have been unfair trade competitors of the National Biscuit Company and its subsidiary corporation, Shredded Wheat Company, and who are alleged upon information and belief to be the real parties interested in the formation of the proposed corporation, had actually appeared upon the stock subscription list or that either or both was in fact interested in the formation of the corporation. ▮ Nothing appearing upon the record before him, it was his duty to perform a ministerial duty and file said articles unless they violated in some manner the provisions of section 296 of the Civil Code. The language of the above code section is too clear and its meaning is too apparent to need the aid of a constructionist. It means precisely what it states and no more or less. When articles of incorporation are presented to the Secretary of State to be filed it is his duty to turn to his records and compare the name of the proposed corporation with those which may be so similar in construction as to be likely to mislead the public, or, as the statute expresses it, which so closely resemble the name of another corporation, domestic or foreign, which is authorized to transact business in this state, as to tend to deceive.

▮ The foreign corporation authorized to transact business within this state and which it is claimed the name of the proposed domestic corporation so nearly resembles as to offend against the law, is Shredded Wheat Company, as contrasted with California Shredded Foods Co., Ltd. The only word common to both corporations is "shredded". In all other respects the identifying words constituting the corporate names of each are neither similar in print nor in sound. Surely it will not be seriously contended that any corporation or person has been granted the exclusive

use of the single word shredded, or the exclusive right to shred, crush, grind or otherwise mill and prepare food for consumption, especially one of the most stable and extensively used cereals known to the human family, wheat. By no means is wheat the only product that is shredded or capable of being shredded, which means to cut or tear, rather than crush or grind. Shredded codfish and shredded cocoanut are staples well known to the public. Doubtless there are many other kinds of foodstuffs which are prepared in shredded form for the market. Corporations naturally are desirous of adopting a corporate name which will be expressive or suggestive of the business in which they are to engage. In view of the present-day tendency of doing business through artificial bodies it would be indeed difficult to select a name descriptive of the business to be transacted without making use of one or more words constituting the corporate name of some other entity engaged in a similar business. Therefore, unless the resemblances are such as are likely, examined in the light of the business situation as it exists, to mislead persons of average discernment as to identity, the right to select a name should not be too strictly circumscribed lest it interfere with business organization. In the instant case the word shredded is descriptive of the method by which the food cereals are to be severed. It would be difficult to name a word which would be synonymous with or as appropriate to the subject as the oft-used word shredded when applied to the preparation of foodstuffs for human consumption. There is no greater proprietary right inherent in the word shredded than there is in cracked wheat, rolled oats and other known forms of grain reductions. As to the scientific process of bringing about such a result another question would be presented. An invasion of the latter right is not involved in this proceeding. It is obvious from a comparison of the two corporate names that they are dissimilar and would not tend to mislead or deceive the average trading person or a person of average discernment, and this being so it was a duty enjoined by law upon the Secretary of State to file said tendered articles. In *State* v. *Howell,* 96 Wash. 163 [164 Pac. 917, 919], the Secretary of State under a statute similar to ours filed incorporating articles of a California corporation which were identical as to name with

that of a Washington corporation which was doing a similar business in the state of Washington. The Washington corporation, which was first to file, brought a *mandamus* proceeding against the Secretary of State to compel him to strike from his records the name of the California corporation adopting the same name as the Washington corporation. The writ was issued as prayed for and the articles of the California corporation stricken from the records. In the course of the proceedings counsel for the respondent, as in the instant case, sought to inject into the proceedings the merits of a controversy existing between the two corporations by which it was claimed that the Washington corporation adopted the name of the California corporation as a move to gain an undue and unfair trade advantage over said California corporation. In answering this argument the court said:

"Much discussion is indulged in and many authorities cited by counsel for the secretary of state having to do with the respective rights of these corporations to the use of the name 'Progressive Motion Picture Company', as a trade-name. Whatever the rights of either of these companies may be to the use of that name as a trade-name we think is foreign to any proper subject of inquiry here. There are numerous authorities holding that the mere acquiring of a corporate name by the organization of a corporation in accordance with statute, or the mere acquiring of the right of a foreign corporation to do business in a state in accordance with statute, does not give to either of such corporations the right to do business in its corporate name, in violation of the trade-name rights of others. [Citing cases.] But this is not the question here for decision, nor will our disposition of this case impair in the least whatever rights either of these corporations may have as against the other, rested upon its claimed trade-name rights. This is simply a question of the secretary of state having failed to perform a plain duty enjoined upon him by the express language of section 3680, above quoted, which duty we are of the opinion the relator had an equally plain right to have performed, and, having promptly asked for relief in that behalf, is now entitled to have that duty in effect performed by striking the name of the California corporation from the records of the office of the secretary of state and

the license of that corporation cancelled. It may be that had not the Washington corporation moved promptly in seeking relief by *mandamus*, it would have lost its right to invoke that remedy against the secretary of state because of rights the California corporation might possibly have acquired which could be rested upon estoppel or laches as against relator. It may also be true that had the names of these corporations, instead of being exactly alike, only resembled each other with a difference such as to furnish room for honest difference of opinion as to whether they so resembled each other 'as to be misleading', thus presenting a question for the exercise of judgment on the part of the secretary of state for decision, we would not award relator relief by *mandamus*. But the resemblance of these names to each other is so complete, they being exactly the same, that there is no room for exercise of judgment upon the question of their similarity; hence there was no question for the secretary of state to decide in that respect as to which there was any room for difference of opinion. The secretary of state in our opinion had no authority whatever to entertain the question of what right either of these companies had against the other to the use of the name 'Progressive Motion Picture Company', except as he was required to determine that question from his own records; and, when by reference thereto, it appeared that the Washington corporation was duly organized as such and had issued to it a license, the scope of his inquiry was at an end, and he had no authority whatever to file articles of any other corporation, domestic or foreign, or to issue a license to any other corporation, domestic or foreign, of the same name. Such is the plain mandatory provision of section 3680.

''We have not lost sight of the general rule invoked by counsel for the secretary of state, citing 26 Cyc. 149, and other authorities, that *mandamus* will ordinarily not be awarded as a remedy where the rights of third parties may be injuriously affected; they not being heard. But we are of the opinion, in view of the plain duty of the secretary of state to have refrained from filing the California corporation's articles and the issuing to it of a license, and the prompt application of the relator for *mandamus* in this proceeding, that such remedy should not be denied relator

because the California corporation is not being heard here. We think the undisputed facts before us render it plain that the California corporation has no such possible rights as entitle it to be heard here."

The test to be applied in determining similarity of trade names as between two contending corporations, as announced by some of the courts of the country and with which we are in agreement, is, "Do the two names so closely resemble each other that a person using that care, caution and observation which the public uses and may be expected to use, would mistake one for the other?" It is true that the court in the above quotation mentions the fact that both names were precisely the same and there was no room for the exercise of discretion, and says, perhaps by way of *dicta*, that in a case where the question of difference is so close as to fairly cause a difference of opinion in the public mind, the action of the Secretary of State would not be disturbed. This is but a statement of the rule which governs all courts in reviewing the action of ministerial officers. But by the uncontradicted record in this case the names are so widely dissimilar as to leave no room for the exercise of discretion or judgment on the part of said public officer which would make it discretionary with him to ignore the existence of patent facts. The same reasoning which justified the issuance of the writ in the Washington case likewise justifies a similar order in the instant case.

This court has held many times that the Secretary of State is a ministerial officer, and it has in times past directed the issuance of the writ of *mandamus* to compel him to perform an office which he, placing his objections upon what he contended were tenable grounds, refused to perform. His duties generally are ministerial and the fact that all officers must use intelligence and must even exercise judgment in the performance of official duty does not clothe them with judicial or arbitrary discretionary power. The statute which prescribes the duties of the Secretary of State does not pretend to give him such broad discretionary powers as are reposed in the superintendent of banks or the commissioner of corporations, respectively, who are selected because of their special skill, training and knowledge of the currency problems and the corporation laws of this state, two of the most important departments of our state

government, and what this court may have said in its reported cases touching the grant of power conferred upon such officers would not be applicable to the performance of a simple ministerial duty prescribed by the plain language of the code.

The Secretary of State is not clothed with the powers of a court of equity and, therefore, cannot decide the issue whether or not the proposed domestic corporation will become an unfair competitor in trade with said foreign corporations which are opposing the filing of petitioner's articles of incorporation.

Upon our view of the proceedings instituted we see no occasion for a reference to a court or referee to take testimony, as there are no material facts essential to a decision of the issues presented which are not disclosed by the record before us.

Under the practice of this court in kindred matters the questions presented are such as entitle petitioners to issuance of the writ.

The demurrer to the petition is overruled. The demurrer to the answer is sustained on the ground that it does not present a defense against the relief prayed for. The writ of *mandamus* will issue commanding the Secretary of State to file petitioners' proposed articles of incorporation, as in such cases provided by law.

It is so ordered.

Richards, J., Shenk, J., Preston, J., Langdon, J., and Waste, C. J., concurred.

CURTIS, J., Dissenting.—I dissent. Section 296 of the Civil Code provided that, "The Secretary of State shall not file articles which set forth a name which is likely to mislead the public or which is the same as, or resembles so closely as to tend to deceive, (1) . . . , (2), the name of a foreign corporation which is authorized to transact business in this state, . . . " The name of the proposed corporation, California Shredded Food Co., Ltd., resembles so closely the name of the Shredded Wheat Company, a foreign corporation authorized to do business in this state, that its use, in the name of a separate and distinct corporation would tend to deceive and mislead the public in dealing with the

products of these two companies. Persons desiring to purchase a shredded wheat product, and being accustomed to purchase that put out by the old company could easily, and undoubtedly would be misled and deceived if the new company be permitted to do business under the name set forth in its articles of incorporation. There are sufficient names, wholly dissimilar from the name Shredded Wheat Company, which any legitimate company might select under which it could do business without impinging upon the name of a well-established company in the hope that it may deceive and mislead the public into purchasing its products under the belief that they are securing goods put out by the old company. Under this state of facts it was the duty of the Secretary of State to refuse to file the articles of incorporation presented to him by the petitioners.

Rehearing denied.

Curtis, J., dissented.