[Civ. No. 33653. First Dist., Div. Four. Nov. 22, 1974.]

THE PEOPLE ex rel. FUND AMERICAN COMPANIES,
Plaintiff and Appellant, v.
CALIFORNIA INSURANCE COMPANY, Defendant and Respondent.

424

**COUNSEL**

Evelle J. Younger, Attorney General, Mervin R. Samuel, Deputy Attorney General, Orrick, Herrington, Rowley & Sutcliffe, Richard J. Lucas, W. Reece Bader and William F. Alderman for Plaintiff and Appellant.

Thelen, Marrin, Johnson & Bridges, Paul R. Haerle and Michael J. Narvid for Defendant and Respondent.

## OPINION

**EMERSON, J.*** — Plaintiff appeals from a judgment entered in a quo warranto action, upholding defendant's right to its franchise as a California corporation and, in particular, defendant's right to use the name, California Insurance Company.

On September 25, 1964, Commercial Union Insurance Company of New York filed an application with the Insurance Commissioner of California for approval of the merging of its subsidiary, The California Insurance Company, with another of its subsidiaries. With the consent of the Insurance Commissioner, the merger became effective on December 31, 1964.

The relator in this action, Fund American Companies (hereafter plaintiff), acting on the above information, determined to secure the right to conduct the business of insurance in California under the name "California Insurance Company."

Industrial Indemnity Company (hereafter defendant), at about the same time also determined to acquire the same name for the same general purpose.

On November 24, 1964, a written request for approval of the name "California Insurance Company" was filed with the Insurance Commissioner on behalf of plaintiff. On November 25, 1964, Mr. Joseph Thomas, chief assistant insurance commissioner, approved the use of said name by plaintiff acting under section 881 of the Insurance Code. In accordance with his regular practice, Mr. Thomas sent a duplicate original of his approval letter to the Secretary of State. This approval was made prior to the termination of the use of said name by the old "The California Insurance Company."

On December 31, 1964, the date on which the old "The California Insurance Company" would be effectively merged and cease to exist, an attorney for defendant filed with the Secretary of State a request for reservation of the name "California Insurance Company," pursuant to section 310

---

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

of the Corporations Code. This request was approved by the Secretary of State and on January 5, 1965, a reservation of said name was issued to the attorney, effective for 30 days thereafter. On January 8, 1965, the attorney advised the Secretary of State that the reservation had been obtained on behalf of Industrial.

On January 22, 1965, the attorneys for defendant sent articles of incorporation for California Insurance Company to the Secretary of State for filing. They were filed by the Secretary of State on February 1, 1965. The defendant knew at the time it sent the articles, that plaintiff had secured approval of the name from the Insurance Commissioner. On February 1, 1965, defendant requested approval of its name by the Insurance Commissioner which was never granted.

Plaintiff did not request the Secretary of State to reserve the name "California Insurance Company" for it, but proceeded exclusively through the Insurance Commissioner's office. Plaintiff never forwarded articles of incorporation to the Secretary of State.

After the filing of defendant's articles of incorporation, the office of the Secretary of State wrote to defendant, stating that its articles had been filed under the mistaken belief that the name reservation obtained by defendant had been from the Insurance Commissioner and requesting that defendant change its name in view of the commissioner's prior approval of the name for use by plaintiff.

The Attorney General also wrote to defendant, notifying it that it was using the name improperly and requesting defendant to change its name. Defendant refused the first request and ignored the second.

The Attorney General granted plaintiff's application for leave to sue in quo warranto, stating that suit was necessary in order to establish the policies of the Secretary of State in relation to the orderly filing of corporate names in view of the "apparent conflict between section 881 of the Insurance Code[1] and section 310 of the Corporations Code."[2]

---

[1]Section 881 of the Insurance Code reads: "The commissioner shall require the name or any changed name of every insurer (including reciprocal or interinsurance exchanges), every attorney in fact, every motor club and every underwritten title company to be submitted to him by written application and approved by him before such name is used in this state for business purposes. He may reject any name so submitted when it is an interference with, or too similar to, one already appropriated, or when it is likely to mislead the public in any respect. In such case a name not liable to such objection must be chosen.

"If the commissioner rejects a name in use elsewhere by an already organized entity which has not commenced an insurance business in this state but is doing an

[2]Footnote 2 appears on page 428.

At trial, defendant argued that it had fully complied with all the legal requirements prescribed by sections 308 and 310 of the Corporations Code

---

insurance business elsewhere and approves and reserves a new name for such entity, such entity shall within 120 days:

"(a) Adopt such new name by appropriate legal steps to amend its articles of incorporation, charter or other basic document, or

"(b) Arrange to conduct any business it may do with the public in California under such approved name as an operating name, retaining its true name for all official business, or

"(c) Abandon whatever application for admission, securities permit or other application it may have pending before the commissioner.

"If the commissioner rejects a name proposed by an entity which has not commenced transaction of insurance anywhere it shall organize under a new name approved by the commissioner, or if already organized legally adopt such new name. Until it does the commissioner may refuse to accept or act upon any such application.

"Except as hereinafter provided the commissioner shall charge and collect in advance a fee of twenty-five dollars ($25) for filing an application for name approval. An application for name approval may contain not more than two alternate names in the order of applicant's choice without additional fee, but the commissioner's approval shall be limited to only one name submitted by any one application.

"Where the person seeking approval of a name is also an applicant for admission and has paid the statutory fee for filing such application and the same is pending, an application for name approval may be filed without additional charge. The fee chargeable when and as provided in this section is in addition to any other fees specified in this code.

"Notwithstanding the provisions of Sections 1282 and 12221 of this code, the provisions of this section shall apply to reciprocal insurers, including their attorneys in fact, and shall apply to motor clubs respectively."

[2]Section 310 of the Corporations Code reads: "The Secretary of State shall not file articles which set forth a name which is likely to mislead the public or which is the same as, or resembles so closely as to tend to deceive, any of the following:

"(a) The name of a domestic corporation.

"(b) The name of a foreign corporation which is authorized to transact business in this State.

"(c) A name which is under reservation for another corporation.

"Any applicant may, upon payment of the fee prescribed therefor in the Government Code, obtain from the Secretary of State a certificate of reservation of any name not prohibited by this section, and upon the issuance of the certificate the name stated therein shall be reserved for a period of 30 days. The Secretary of State shall not, however, issue certificates reserving the same name for two or more consecutive 30-day periods to the same applicant or for the use or benefit of the same person, partnership, firm or corporation; nor shall consecutive reservations be made by or for the use or benefit of the same person, partnership, firm or corporation of names so similar as to fall within the prohibitions of this section.

"The use by a corporation of a name in violation of this section may be enjoined notwithstanding the filing of its articles by the Secretary of State."

for reserving the name "California Insurance Company." Hence, it alleged, it was entitled to the use of this name and could not be disenfranchised.

Plaintiff argued that defendant was not entitled to the name because plaintiff had previously reserved the same name pursuant to section 881 of the Insurance Code. In support of this claim, plaintiff sought to establish (1) that from November 1964 through February 1965 the office of the Secretary of State had an established administrative practice in connection with its function of reserving corporate names for California insurance companies of deferring to prior name reservations or approvals of the Insurance Commissioner; (2) that the office of the Secretary of State committed a mistake of fact in accepting for filing on February 1, 1965, the articles of incorporation of the defendant, California Insurance Company; and (3) that defendant's articles of incorporation should not have been accepted by the Secretary of State because they did not authorize the mimimum amount of capital required of any corporation which proposes to engage in the insurance business (Ins. Code, § 700.01).

The trial judge submitted two special interrogatories to the jury. They were: "Special Interrogatory No. 1: State whether or not, from November 1964 through February 1965 the office of the Secretary of State had any established administrative practice in connection with its function of reserving corporate names for California insurance companies of deferring to prior name reservations or approvals of the Insurance Commissioner.

"Special Interrogatory No. 2: If the answer to Special Interrogatory No. 1 is 'Yes,' then state whether, based upon said practice, the office of the Secretary of State committed a mistake of fact in accepting for filing on February the 1st, 1965, the Articles of Incorporation of the defendant, California Insurance Company.

"If the answer to Special Interrogatory No. 1 is 'No,' do not answer Special Interrogatory No. 2."

The jury answered "yes" to both inquiries. The judge, however, ultimately found in favor of defendant.

As to verdict No. 1, the judge accepted it and indeed, entered it as a finding of fact. He ruled, however, that it was merely a finding that the practice existed and that the legal effect of the finding was a question of law for the court. He then went on to hold that: "Any administrative practice of the Secretary of State of deferring to the Insurance Commissioner concerning names to be reserved for domestic insurers is both

(a) unreasonable, and (b) invalid to the extent that it purports to alter or enlarge the statutory mandate on the Secretary of State to reserve a corporate name where the statutory requirements have been met by the filing corporation."

Having thus determined that the practice had no legal effect the judge ignored special verdict No. 2. He ruled that the question of mistake in this case was one of law and not of fact and need not have been submitted to the jury.

The effect of the judgment is to hold that there is no conflict between the two statutes, that the Secretary of State had no discretion except to file defendant's articles of incorporation and that had he refused to do so, he could have been compelled to file them by writ of mandate.

### Is There a Conflict Between Insurance Code Section 881 and Corporations Code Section 310?

■ No. There is nothing in Insurance Code section 881 which requires that the name of a domestic insurer be submitted to the Insurance Commissioner before it is incorporated.

Plaintiff says that this conclusion is not at issue in this appeal. It argues that this case involves the rights of the parties when one of them in fact does obtain approval from the Insurance Commissioner before the other obtains a reservation from the Secretary of State.

Plaintiff therefore contends that the court below erred in concluding that the administrative practice found by the jury was without legal significance in that the practice is an exercise of the Secretary of State's duty to harmonize potentially conflicting statutes; it must be upheld unless it is clearly erroneous; it is not clearly erroneous; it represents the most reasonable interpretation of the statutory provisions and, in response to a point raised by defendant, the finding of the jury is supported by the evidence.

The last point is well taken. Applying the familiar rule stated in *Crawford* v. *Southern Pacific Co.*, 3 Cal.2d 427 [45 P.2d 183],[3] we find that

---

[3]"It is an elementary, but often overlooked principle of law, that when a verdict is attacked as being unsupported, the power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or un-contradicted, which will support the conclusion reached by the jury. When two or more inferences can be reasonably deduced from the facts, the reviewing court is without power to substitute its deductions for those of the trial court. (*Treadwell* v. *Nickel*, 194 Cal. 243 [228 Pac. 25]; *Bancroft-Whitney Co.* v. *McHugh*, 166 Cal. 140 [134 Pac. 1157]; *Wing* v. *Kishi*, 92 Cal.App. 495 [268 Pac. 483].)" (*Supra*, at p. 429.)

there is sufficient evidence to support the conclusion reached by the jury.

Plaintiff's other arguments, as stated above, do not go to the question of statutory conflict. They lead us to the next question.

*Did the Secretary of State Have Discretion to Reject the Defendant's Articles on the Basis of the Insurance Commissioner's Appropriation of the Name to Plaintiff?*

■ No. An administrative determination will be interfered with by the courts where the determination is based upon an error in law. (2 Cal. Jur.3d, Administrative Law, § 267, p. 518.) It is for the courts, not for administrative agencies, to lay down the governing principles of law. Accordingly, questions of law are reviewable. (*Cooper* v. *State Bd. of Medical Examiners,* 35 Cal.2d 242 [17 P.2d 630, 18 A.L.R.2d 593].)
■ Whether an administrative agency applies the legislative standards validly set up, and whether it acts within the authority conferred or goes beyond it, are proper questions for judicial decision. (*Power Co.* v. *Industrial Act. Com.,* 191 Cal. 724 [218 P. 1009].) The matter of statutory construction is not finally entrusted to administrative agencies; it is determined ultimately by the courts. (*Bethlehem Corp.* v. *Industrial Acc. Com.,* 181 Cal. 500 [185 P. 179, 7 A.L.R. 1180].)

The functions, powers, and duties of administrative agencies are generally classified as either ministerial or discretionary. (2 Cal.Jur.3d, Administrative Law, § 46, p. 264.)

■ Discretion may be defined, when applied to public functionaries, as the power conferred on them by law to act officially according to the dictates of their own judgment. A ministerial act, on the other hand, is one that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning the propriety or impropriety of the act to be performed, when a given state of fact exists. (*Williams* v. *City of Stockton,* 195 Cal. 743, 748 [235 P. 986].) Stated otherwise, it is an act with respect to the performance of which a public officer can exercise no discretion—an act or duty prescribed by some existing law that makes it incumbent on him to perform precisely as laid down by the law. (*Chase* v. *Kalber,* 28 Cal.App. 561 [153 P. 397]; *City of Mill Valley* v. *Saxton,* 41 Cal.App.2d 290 [106 P.2d 455].) "In short, where a statute requires an officer to do a prescribed act on a prescribed contingency, his

functions are ministerial." (2 Cal.Jur.3d, Administrative Law, § 46, p. 265.)

In granting judgment for the defendant, the lower court stated that the Secretary of State is required to reserve names of corporations meeting the requirements of the Corporations Code and has no discretion not to do so.

In the instant context, the lower court's conclusion is correct. The administrative practice found to exist was a violation of the mandatory provisions of Corporations Code sections 308-310, and cannot be sustained upon a proper construction of the pertinent statutes

Plaintiff relies on *Cranford* v. *Jordan,* 7 Cal.2d 465 [61 P.2d 45], to support its position that defendant cannot prevail in this action unless it establishes that it was an abuse of discretion for the Secretary of State to defer to prior appropriations of names by the Insurance Commissioner. In that case, the Supreme Court held that under section 291 of the Civil Code (the predecessor to § 310), the Secretary of State had discretion to refuse to file articles of a proposed corporation when the name of the proposed corporation was similar to that of an existing corporation, and stating at pages 467-468: "Finally, it should be said that the respondent has obeyed the mandate of the section which we have quoted. It is his opinion that the name is one which would tend to mislead the public. The section vests in him a certain discretionary power which he may be compelled to exercise, but which, in the absence of an abuse of discretion, we should not compel him to exercise in any particular manner. *In other words, where it appears that there is a reasonable basis for the action of a public officer possessing discretionary power we cannot substitute our judgment for his. (Bank of Italy* v. *Johnson,* 200 Cal. 1, 31 [251 Pac. 784]; *Rixford* v. *Jordan, supra,* p. 555 [214 Cal. 547 (6 P.2d 959)]; *State* v. *Hinkle, supra* [139 Wash. 651 (247 P. 1029)].) The petitioner has failed to disclose a meritorious reason why we should interfere by the writ of mandate to allow him to make use of a corporate designation which is apt to deceive." (Italics added.)

As defendant correctly notes, the discretion which the Secretary of State had in *Cranford* was totally within the confines of what is now section 310. The Secretary had his file of prior corporate names, and simply determined that the applicant's name, "Transamerica Corporation," was deceptively similar to a previously incorporated company "Transamerica Service Corporation." To equate the quantum of discretion involved in that case with the "discretion" involved in the instant case is erroneous. For here, the

Secretary of State, in deferring to the Insurance Commissioner, was exercising his "discretion" as to the legal meaning of two conflicting statutes. This is a case where the secretary was exercising judicial power in "harmonizing" the statutes—powers clearly beyond the area of his ministerial functions. Plaintiff's reliance on *Cranford* begs the question, as all that case holds is that the Secretary of State must exercise his *limited* discretion reasonably. The issue in the instant case is whether he had *any* discretion to defer to the Insurance Commissioner. The answer to this is no. Such deferrals were both outside the scope of his ministerial duties, and erroneous as a matter of law.

> *Should the Secretary of State Have Accepted Defendant's Articles of Incorporation Although They Showed on Their Face That Defendant Was Undercapitalized?*

Yes. Plaintiff argues that defendant's articles of incorporation did not conform to law within the meaning of Corporations Code section 308. Plaintiff's argument is based on the contention that defendant's articles do not authorize the minimum amount of capital required of any corporation which proposes to engage in the business of insurance. (Ins. Code, § 700.01.) This argument is a second and independent basis upon which plaintiff contends it is entitled to relief in this quo warranto action.

Section 700.01 of the Insurance Code requires incorporated domestic insurers to have a paid-in capital of not less than $1,000,000 or the aggregate of specified separate amounts based on the classes of insurance which the corporation is authorized to transact, whichever is lower. Defendant's articles authorize it to engage in 16 separate areas of insurance. Under section 700.01 its required minimum capital would be $1,000,000. Only $25,000 was authorized by its articles.

However, a reading of sections 700 and 700.01 makes it clear that the capital requirements specified therein must only be met before a certificate of authority to transact an insurance business may be granted, that is, before an incorporated insurer may lawfully transact business. The fact that defendant's articles did not conform to the requirements of section 700.01 of the Insurance Code does not ipso facto mean that they were illegal, within the meaning of Corporations Code section 308.

There is no authority for the proposition that before an insurance corporation may receive its franchise from the Secretary of State it must show that it has obtained prior approval of its articles from another state

agency, or indeed, that such articles must fully conform with requirements that must be met before the entity will be certified to commence business.

Moreover, there appears to be no reason why defendant, before applying for a certificate of authority, could not amend its articles by increasing its capitalization to the required amount.

The parties raise other issues on this appeal. All have been carefully considered by this court. None of them requires discussion in view of the foregoing analysis.

The judgment is affirmed. The defendant has the right to the use of the name "California Insurance Company." (See Code Civ. Proc., § 805.)

Rattigan, Acting P. J., and Christian, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied January 16, 1975.