Filed 9/5/13

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE ROMAN CATHOLIC BISHOP OF SAN JOSE et al., Plaintiffs and Appellants, v. DEBRA BOWEN, as Secretary of State, etc., Defendant and Respondent. | C070516 (Super. Ct. No. 34-2011-80000942-CU-WM-GDS) |

APPEAL from a judgment of the Superior Court of Sacramento County, Michael P. Kenny, Judge. Affirmed.

Sweeney & Greene, James F. Sweeney, Stephen J. Greene, Jr., Laura Borden Riddell and John M. Cox for Plaintiff and Appellant.

Kamala D. Harris, Attorney General, Douglas J. Woods, Senior Assistant Attorney General, Peter K. Southworth, Supervising Deputy Attorney General and Sylvia A. Cates, Deputy Attorney General for Defendant and Respondent.

Plaintiffs the Roman Catholic Bishop of San Jose and Reverend Monsignor Francis V. Cilia appeal from a judgment denying their petition for a writ of mandate to (1) direct the Secretary of State (Secretary) to file the articles of incorporation of "Pastor of Santee Catholic Mission, a Corporation sole," (2) declare the Secretary violated the

1

Administrative Procedures Act (Gov. Code, § 11340 et seq.; hereafter APA) by evaluating submitted articles pursuant to rules that are not authorized by law or promulgated pursuant to the APA, and (3) enjoin the Secretary from subjecting submitted articles to such rules. Plaintiffs contend the trial court erred in denying their petition because the Secretary's "authority to review and file submitted articles of incorporation is strictly ministerial," and, even assuming the Secretary has some discretionary authority in reviewing articles of incorporation prior to filing, such authority was repeatedly abused.

We shall conclude that the Secretary has a ministerial duty to file submitted articles of incorporation "[i]f they conform to law . . . ." (Corp. Code, § 10005.)[1] We shall further conclude that the Secretary acted well within her ministerial authority in refusing to file the articles of incorporation for "Pastor of Santee Catholic Mission, a corporation sole," because the dissolution provision contained therein does not conform to and is in direct conflict with section 10015 in that it fails to direct that any remaining assets be distributed to the Santee Catholic Mission Parish, "the religious organization *governed by* the corporation sole . . . ." (§ 10015, italics added.) Finally, to the extent plaintiffs challenge other modifications requested by the Secretary, we shall conclude that plaintiffs have failed to show that any of those changes resulted in a miscarriage of justice (Cal. Const., art. VI, § 13) or that plaintiffs were prejudiced thereby (Code Civ. Proc., § 475). Accordingly, we shall affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Evolution of Corporations Sole*

"The civil law has long provided for the protection and preservation of the property of religious organizations by means of the entity known as a corporation sole. The corporation sole 'is a venerable creation of the common law of England and is well

---

[1]   Further undesignated statutory references are to the Corporations Code.

2

established under common law in California. [Citations.]' [Citation.]" (*Berry v. Society of Saint Pius X* (1999) 69 Cal.App.4th 354, 366 (*Berry*).) " 'One principal purpose of the corporation sole is to insure the continuation of ownership of property dedicated to the benefit of a religious organization which may be held in the name of its titular head.' [Citation.]" (*Id.* at p. 367.)

"California by statute 'has legitimized this tradition and regulates the formalities attendant upon the creation and continued existence of the corporation sole.' [Citation.]" (*Berry, supra,* 69 Cal.App.4th at p. 366; see also §§ 10000-10015.) "A corporation sole may be formed . . . by the bishop, chief priest, presiding elder, or other presiding officer of any religious denomination, society, or church, for the purpose of administering and managing the affairs, property, and temporalities thereof." (§ 10002.) The articles of incorporation must include: the name of the corporation; that the officer forming the corporation is authorized by the rules, regulations, or discipline of the religious denomination, society, or church to take such action; the county where the principal office for the transaction of the business of the corporation is located; and the manner in which any vacancy occurring in the office of the bishop, chief priest, presiding elder, or other presiding officer is required to be filled by the rules, regulations, or constitution of the denomination, society, or church. (§ 10003.) In addition to these mandatory provisions, the articles "may state any desired provision for the regulation of the affairs of the corporation in a manner *not in conflict with law . . . .*" (§ 10004, italics added.) "The articles shall be signed and verified by the bishop, chief priest, presiding elder, or other presiding officer forming the corporation and shall be submitted to the Secretary of State for filing in his office. *If they conform to law he shall file them* and endorse the date of filing thereon." (§ 10005, italics added.) "A corporation sole may be dissolved and its affairs wound up voluntarily by filing with the Secretary of State a declaration of dissolution executed, signed, and verified by the chief officer of the corporation." (§ 10012.) "After the debts and obligations of the corporation are paid or adequately

3

provided for, any assets remaining shall be transferred to the religious organization *governed by* the corporation sole, or to trustees in its behalf, or disposed of as may be decreed by the superior court of the county in which the dissolved corporation had its principal office upon petition therefor by the Attorney General or any person connected with the organization." (§ 10015, italics added.)

B.      *Articles of Incorporation of "Pastor of Santee Catholic Mission, a Corporation Sole"*

The Roman Catholic Bishop of San Jose, a corporation sole, is the civil legal entity through which the Diocese of San Jose owns and administers temporal goods of the faithful in that community. Reverend Monsignor Francis V. Cilia is the Vicar General of the Diocese of San Jose and Acting Parochial Administrator Pro Tempore of Santee Catholic Mission Parish.

In 2011, the Diocese of San Jose sought to form a new Catholic parish in San Jose, Santee Catholic Mission Parish, and the Roman Catholic Bishop of San Jose authorized Cilia to incorporate as a corporation sole.

On July 26, 2011, Cilia submitted articles of incorporation for "Pastor of the Santee Catholic Mission, a corporation sole," to the Secretary. In addition to the four mandatory provisions, the articles contained a number of optional provisions, including Article XI, a dissolution provision. It reads in pertinent part: "In the event of dissolution or final liquidation, Santee Catholic Mission shall, after paying or making provision for the payment of all the lawful debts and liabilities of this Corporation sole, distribute all the assets of the Corporation sole to: (i) The Roman Catholic Bishop of San Jose to be used exclusively for religious purposes; or to (ii) a trustee, or trustees, of a trust or trusts, the beneficiary or beneficiaries of which is or are one or more Roman Catholic parishes or Corporations sole organized and operated exclusively for religious purposes within the Diocese of San Jose; or, (iii) in the event The Roman Catholic Bishop of San Jose or a trust, or trusts, as described above is or are unable or unwilling to accept such assets, such

4

assets shall be disposed of as may be decreed by the Superior Court of the County of Santa Clara upon petition therefor by the Attorney General or any person connected with the Corporation."[2]

The following day, July 27, 2011, the articles were returned to plaintiffs, along with a written response from Carleen Wood, staff counsel in the Secretary's Business Programs Division. Wood explained that the articles were being returned because Article XI was in conflict with section 10015. According to Wood, "Article XI cannot distribute assets in any manner other than as provided in Section 10015."

Over the next few weeks, there were a series of communications between plaintiffs' counsel and members of the Secretary's staff during which plaintiffs' counsel "attempted to educate [the Secretary's] staff on the ecclesial and canonical structures of Roman Catholic dioceses and Roman Catholic parishes." Plaintiffs' counsel asserted that Article XI could not be amended to provide that "the assets upon dissolution be distributed to 'The Roman Catholic Bishop of San Jose in trust for Santee Catholic Mission' or some provision similar thereto" as suggested by members of the Secretary's staff because, unlike other local churches, a parish is not "congregationally autonomous and self-governed." Rather, it is part "of the larger Catholic community that is governed both by a pastor and, with regard to certain extraordinary administrative acts, the diocesan bishop." Because, according to plaintiffs' counsel, it is the diocesan bishop that forms parishes, "provides them initially with the property and resources necessary to engage in parochial ministry, and participates canonically in their governance, [the

_____

[2]  Initially, Article XI contained language indicating that the Roman Catholic Bishop of San Jose is a "corporation sole" and omitted the language "as may be decreed by the Superior Court." Plaintiffs removed the "corporation sole" language in an attempt to address the Secretary's concern that Article XI did not comply with section 10015 and added the "as may be decreed by the Superior Court" language at the Secretary's request. It is this amended version that is at issue here.

bishop] is . . . entitled to recover such property for the purpose of administering it according to the norms of canon law . . . ." Plaintiffs' counsel further asserted that "when a parish is suppressed by the diocesan bishop, it ceases to exist. Thus, if Santee Catholic Mission were suppressed at some point in the future . . . there would be no ecclesial entity that could function as a beneficiary to a trust, as there would be no Santee Catholic Mission."

Edward S. Maxwell, general counsel with the Business Programs Division, responded by reiterating the Secretary's position that "the submitted provision contained in Article XI to have the assets upon dissolution go to the corporation sole named The Roman Catholic Bishop of San Jose, is in direct conflict with text of Corporations Code section 10015, which in this instance requires the assets to be distributed to the Santee Catholic Mission, or be distributed in trust for the Santee Catholic Mission." Maxwell additionally observed that the dissolution provision contained in the proposed articles of incorporation was consistent with that "permitted by Corporations Code section 9132(a)(2)(B)[3] for a nonprofit religious corporation" and advised plaintiffs' counsel that plaintiffs might want to consider forming that type of corporation instead of a corporation sole.

---

[3]   Section 9132, subdivision (a), pertaining to nonprofit religious corporations, provides in pertinent part: "The articles of incorporation may set forth any or all of the following provisions, which shall not be effective unless expressly provided in the articles: [¶] . . . [¶] (2) In the case of a subordinate corporation instituted or created under the authority of a head organization, a provision setting forth either or both of the following: [¶] (A) That the subordinate corporation shall dissolve whenever its charter is surrendered to, taken away by, or revoked by the head organization granting it. [¶] (B) That in the event of its dissolution pursuant to an article provision allowed by subparagraph (A) or in the event of its dissolution for any reason, any assets of the corporation after compliance with the applicable provisions of Chapters 16 (commencing with Section 6610) and 17 (commencing with Section 6710) (made applicable pursuant to Section 9680) shall be distributed to the head organization."

Plaintiffs' counsel responded that the Santee Catholic Mission assets cannot be distributed to the Santee Catholic Mission if it ceases to exist. He also asserted that during the past year, the Secretary had filed more than 120 articles of incorporation containing dissolution provisions identical to that contained in the submitted articles and requested the legal authority "regarding [the Secretary's] authority to engage in such interpretation and/or to undertake such adjudications regarding the substantive content of articles filed under Corporations Code § 10000 et sequitur."

In response to plaintiffs' counsel's request, Maxwell indicated that sections 10004 and 10005 provide that the contents of the articles of incorporation cannot conflict with the law, and that section 10005 additionally provides that the Secretary must review articles of incorporation for compliance with applicable law prior to filing. He further explained that the Secretary reviews submitted articles on a submission-by-submission basis, and the fact that other articles of incorporation containing identical dissolution provisions had been filed "is not a factor" in the review process. In addition, he advised plaintiffs' counsel that "[s]hould the Santee Catholic Mission be eliminated as hypothesized in your correspondence, . . . sections 10012 through 10014 provide for the required filings with our office . . . ."

C.      *Events Preceding the Submission of the Articles of Incorporation for "Pastor of Santee Catholic Mission, a Corporation Sole"*

In October and November 2010, prior to submitting the articles of incorporation for "Pastor of Santee Catholic Mission, a corporation sole," plaintiffs' counsel submitted 97 articles of incorporation on behalf of the Roman Catholic Bishop of San Diego for new parish corporations sole. The first 64 articles submitted, which were substantively identical to those submitted for the Santee Catholic Mission, were filed without incident. The next 25 articles submitted (like the first 64) bore an abbreviated reference to the corporate name in the title of the document, followed by a formal recital of the corporate name in the official text of the articles. The Secretary advised plaintiffs' counsel that the

7

text in both the title and Article I of the submitted articles had to be identical, or the articles would be rejected. The "trivial" and "non-substantive changes," as characterized by plaintiffs, were made, and all 25 submitted articles were filed. Thereafter, an additional eight articles were submitted on behalf of the Roman Catholic Bishop of San Diego. Each included the "non-substantive change" that had been requested with respect to the 25 articles previously submitted and were filed without incident.

On July 21, 2011, the Roman Catholic Bishop of Sacramento submitted articles of incorporation for a new parish corporation sole, which included the change in the title noted above. In all other respects, the articles were substantively identical to the 97 articles mentioned above. The Secretary requested, for the first time, that the phrase "[t]o the fullest extent permitted by law" be added to one sentence of the articles. The change was made and the articles were filed.

Each of the 98 articles of incorporation filed contained a dissolution provision identical to that contained in the articles submitted for "Pastor of Santee Catholic Mission, a corporation sole."

D.      *Petition for Writ of Mandate*

On August 26, 2011, plaintiffs filed a verified petition for writ of mandate and complaint for injunctive and declaratory relief challenging what plaintiffs described as the Secretary's "failure to perform the legally-mandated, ministerial duty of filing articles of incorporation for the Pastor of Santee Catholic Mission, a corporation sole," "unlawful and unauthorized exercise of substantive, quasi-adjudicative review of submitted articles of incorporation, and capricious application of arbitrary and inconsistent standards known only to [the Secretary] and her staff." (Code Civ. Proc., § 1085.) Plaintiffs argued that (1) the Secretary possesses only ministerial authority over the approval and endorsement of submitted articles of incorporation, (2) such authority "is limited to a review of submitted articles to ensure that the requisite components for forming a corporation sole are present," and (3) the Secretary "exceeded her ministerial authority by demanding

8

substantial redrafting of portions of the articles of incorporation submitted by [plaintiffs], and by ultimately rejecting them." Plaintiffs further asserted that even if the Secretary "had any discretionary authority to require redrafting of submitted articles of incorporation, the exercise of that authority relative to the articles of incorporation for Santee Catholic Mission was arbitrary and capricious and should be enjoined."

The trial court denied the petition. It found that "the plain language of [sections] 10004 and 10005 unambiguously confers discretionary authority upon [the Secretary] to determine whether articles of incorporation submitted to [her] comply with the law. In addition to including the requisite four items enumerated by [section] 10003 in its articles of incorporation, [section] 10004 allows [plaintiffs] to include in its articles any other discretionary provision related to the regulation of [plaintiffs'] affairs 'not in conflict with law . . . .' [Section] 10005 only requires [the Secretary] to file [plaintiffs'] articles of incorporation '[i]f they conform to law . . . .' " The court further found that plaintiffs failed to establish the Secretary acted arbitrarily and capriciously in refusing to file the submitted articles of incorporation, explaining that section "10015 requires that assets be distributed to 'the religious organization governed by the corporation sole,' " and "[Plaintiffs] do not dispute that The Roman Catholic Bishop of San Jose is not 'governed by' the corporat[ion] sole, and its articles of incorporation clearly demonstrate the reverse--that The Roman Catholic Bishop of San Jose governs the corporation sole." The trial court also stated that: "To the extent that [plaintiffs'] conten[tion] that [the Secretary] acted arbitrarily and capriciously in rejecting [plaintiffs'] articles of incorporation is predicated on the other 'trivial' and 'ridiculous' changes requested by [the Secretary], [plaintiffs'] contention is rejected. These other changes are not presently at issue. The record demonstrates that [the Secretary's] final refusal to file [plaintiffs'] articles of incorporation is based on the allegedly improper dissolution provision."

Judgment was entered in the Secretary's favor.

Plaintiffs appeal.

9

DISCUSSION

Plaintiffs contend the trial court erred in denying their petition because "there is no clear statutory delegation of authority to [the Secretary] to scrutinize or extract editorial concessions on [articles of incorporation] as a condition for filing," and "[e]ven if [the Secretary] had more than ministerial authority concerning review of articles of incorporation for corporations sole, that discretion has been repeatedly abused." As we shall explain, the Secretary has a ministerial duty to file submitted articles of incorporation "[i]f they conform to law . . . ." (§ 10005.) The dissolution provision at issue here does not conform to law and is in conflict with section 10015 because it directs that any remaining assets be distributed to the Roman Catholic Bishop of San Jose, a religious organization that is *not* governed by the corporation sole. Accordingly, the Secretary properly refused to file the submitted articles of incorporation for "Pastor of the Santee Catholic Mission, a corporation sole," and the trial court properly denied plaintiffs' writ of mandate. To the extent plaintiffs assert that the judgment should be reversed based on the additional "editorial demands" made by the Secretary in connection with articles submitted on behalf of the dioceses of San Diego and Sacramento and parishes within those dioceses, we question whether plaintiffs the Roman Catholic Bishop of San Jose and Cilia, the Vicar General of the Diocese of San Jose and Acting Parochial Administrator Pro Tempore of Santee Catholic Mission Parish, have standing to raise such claims. (See *Holmes v. California Nat. Guard* (2001) 90 Cal.App.4th 297, 314-315.) Even assuming plaintiffs do have standing to raise such claims, they have failed to show that any of the other requested changes resulted in a "miscarriage of justice" (Cal. Const., art. VI, § 13), or that plaintiffs were prejudiced thereby (Code Civ. Proc., § 475). To the contrary, plaintiffs describe the additional edits as "trivial or substantively meaningless." Accordingly, we shall focus our analysis on the Secretary's refusal to file the articles submitted for "Pastor of Santee Catholic Mission, a corporation sole."

10

We begin our analysis by observing "[c]ivil courts have general authority to resolve questions regarding the right to possession of church property." (*Berry, supra,* 69 Cal.App.4th at p. 364.) "With respect to the resolution of such disputes, the free exercise clause of the First Amendment to the United States Constitution and its California counterpart (Cal. Const., art. I, § 4) precludes civil courts from adjudicating church property disputes on the basis of religious doctrine and practice." (*Ibid.*) "Such disputes[, however,] may be adjudicated by resort to neutral principles of law. [Citation.] This approach requires analysis of the language of instruments such as deeds, church charters, state statutes governing the holding of church property, and provisions in a church constitution pertaining to ownership and control of church property [citation], and here, . . . articles of incorporation." (*Id.* at pp. 364-365.) In resolving the dispute at issue here, the trial court did not become entangled in doctrinal differences. Rather, it decided the matter on the basis of the text of the articles of incorporation and by evaluating whether it complies with the statutory scheme governing corporations sole.

"Ordinary mandamus lies to compel the performance of a clear, present, and ministerial duty where the petitioner has a beneficial right to performance of that duty. [Citations.] An appellate court reviewing a mandamus judgment must determine whether the agency had a ministerial duty capable of direct enforcement. [Citation.] [¶] ' "A ministerial act is an act that a public officer is required to perform in a prescribed manner in obedience to the mandate of legal authority and without regard to his own judgment or opinion concerning such act's propriety or impropriety, when a given state of facts exists." [Citation.]' [Citation.]" (*California Assn. of Professional Scientists v. Department of Finance* (2011) 195 Cal.App.4th 1228, 1236 (*California Assn. of Professional Scientists*).)

Whether the Secretary has a ministerial duty to file submitted articles of incorporation and the scope of any such duty depend upon the meaning of various statutes. Where, as here, the trial court's decision did not turn on any disputed facts, its

11

interpretation of the relevant statutes is subject to our de novo review. (*California Assn. of Professional Scientists*, *supra,* 195 Cal.App.4th at p. 1236.)

As plaintiffs correctly assert, the Secretary has only such powers as have been conferred on her by the California Constitution or statute. (See *Ferdig v. State Personnel Board* (1969) 71 Cal.2d 96, 103; see also *Rixford v. Jordan* (1931) 214 Cal. 547, 551, 555 (*Rixford*), *California Assn. of Professional Scientists*, *supra,* 195 Cal.App.4th at p. 1236.) As relevant here, the Secretary has a ministerial duty to file submitted articles of incorporation *"*[*i*]*f* they conform to law . . . ." (§ 10005, italics added; see also *Rixford, supra,* 214 Cal. at p. 555 [holding that the Secretary of State is a ministerial officer].) The Secretary refused to file the submitted articles of incorporation because she determined they did not conform to section 10015. Plaintiffs assert that the Secretary exceeded her ministerial authority in refusing to file the articles on this basis. Without any citation to authority, plaintiffs claim that in enacting the corporation sole statutes, the Legislature intended for the Secretary to "conduct a cursory, ministerial review of submitted articles of incorporation, to ensure that the four basic required components [set forth in section 10003] are present, and to identify whether any provisions of the articles are out of place or clearly in conflict with law --- and if the articles meet this threshold review, [the Secretary] must file them."

Section 10005 plainly states that "[*i*]*f* [the articles of incorporation] conform to law [the Secretary] shall file them . . . ." (Italics added.) Contrary to plaintiffs' assertion, there is no indication in section 10005 or elsewhere in the statutory structure that the Legislature intended to limit the Secretary's review to determining whether the articles contain the four mandatory provisions set forth in section 10003. Rather, section 10004 provides that in addition to the four mandatory provisions set forth in section 10003, the articles "may state any desired provision for the regulation of the affairs of the corporation in a manner *not in conflict with law* . . . ." (§ 10004, italics added.) We need not determine here the outer limits of the Secretary's authority under section 10005.

12

Suffice it to say that at a minimum, the Secretary's authority extends to determining whether submitted articles of incorporation on their face conform to the statutes governing corporations sole prior to filing the same.[4]

As previously discussed, the Secretary determined the submitted articles did not conform to section 10015, which provides that in the event of dissolution, any remaining assets "shall be transferred to the religious organization *governed by* the corporation sole, or to trustees in its behalf, or disposed of as may be decreed by the superior court . . . ." (Italics added.) The Santee Catholic Mission Parish is the religious organization governed by "Pastor of the Santee Catholic Mission, a corporation sole." However, the submitted articles direct that in the event of dissolution or final liquidation, any remaining assets be distributed to the Roman Catholic Bishop of San Jose, or to trusts not for the benefit of the Santee Catholic Mission Parish, but rather for other parishes or corporations sole within the Diocese of San Jose. As the submitted articles make plain, the Roman Catholic Bishop of San Jose is the entity that governs the proposed corporation sole, not the other way around. For example, Article III provides: "To the fullest extent permitted by law, this corporation shall be governed, and shall operate at all times, in accordance with . . . the policies, guidelines, and Statutes of the Roman Catholic Diocese of San Jose promulgated by the Roman Catholic Bishop of San Jose . . . ." Article IV likewise provides: "The Roman Catholic Bishop of San Jose, who is the chief pastor of the Diocese of San Jose and who governs the Diocese of San Jose *and Santee Catholic Mission . . . .*" (Italics added.)

---

[4] Even assuming for argument's sake that the Secretary's authority is limited "to scan[ning] submitted articles for obviously improper provisions," as plaintiffs suggest, she acted with such authority here because, as detailed below, the dissolution provision obviously conflicts with section 10015.

Plaintiffs do not contend that the Roman Catholic Bishop of San Jose is the religious organization governed by the corporation sole. Rather, they assert that the Secretary's "application of section 10015 disregards the role of a corporation sole in a hierarchical religion such as the Roman Catholic Church." According to plaintiffs, unlike "other Christian, congregational-structured faiths, where the disbanding of a local church would result in congregants having to seek out and join a completely separate and different church entity," "[i]n the event a parish is suppressed, . . . the Catholics who had attended that particular community remain part of the Catholic Church, and they may readily shift their worship activity to other remaining parishes in the Diocese . . . . [¶] The dissolution provision in question, therefore, was purposely included . . . as a means of enshrining in the corporate charter for the corporation sole the limitation that if a parish is suppressed--thereby requiring the dissolution of the civil corporation sole--any residual assets must remain with the Catholic community, under the stewardship of the diocesan bishop, in accordance with Catholic canon law."

What plaintiffs fail to recognize, however, is that "[t]he act of incorporating as a corporation sole in California is purely voluntary and such a decision voluntarily subjects the corporation sole to the long-standing pertinent legislation." (*Berry, supra,* 69 Cal.App.4th at p. 373.) " '[C]hurch tradition cannot govern civil statutory interpretation. Such is the separation between church and state.' " (*Id.* at p. 371.) Although " '[t]he . . . Code of this state . . . expressly permits religious bodies to incorporate, . . . such incorporation is only permitted as a convenience to assist in the conduct of the temporalities of the church.' " (*Id.* at p. 372.) Contrary to plaintiffs' assertion, it is not the Secretary's "application" of section 10015 that creates the problem, it is the statutory language itself. The Secretary's adherence to that language is not "abusive," as plaintiffs assert, but mandatory. Accordingly, the Secretary acted well within her ministerial authority in refusing to file the submitted articles, and the trial court properly denied plaintiffs' petition for writ of mandate.

Contrary to plaintiffs' assertion, *Berry, supra,* 69 Cal.App.4th 354, does not support their assertion that upon dissolution of "Pastor of Santee Catholic Mission, a corporation sole," any remaining assets must be distributed to the Roman Catholic Bishop of San Jose. *Berry* does not deal with the dissolution of a corporation sole. Rather, it concerns the authority of the pastor of the " 'Pastor, Saint Pius V Apostolate of California, a corporation sole,' " to unilaterally amend the articles of incorporation to allow him to appoint his own successor. (*Id.* at pp. 357-358.) Section 10010, which governs amendments to articles of incorporation for corporations sole, requires that an amendment be "duly authorized by *the religious organization governed by the corporation.*" (Italics added.) In *Berry*, the court of appeal rejected the argument that the pastor was both the corporation sole and the "underlying religious organization," and therefore could unilaterally amend the articles of incorporation. (*Id.* at pp. 368-372.) In doing so, it observed that the "argument denying the existence of a religious organization apart from the holder of the office of corporation sole overlooks the relationship of the corporation *to the congregation or church membership.*" (*Id.* at p. 371, italics added.) Thus, if anything, *Berry* supports a finding that the religious organization governed by the "Pastor of Santee Catholic Mission, a corporation sole," is its congregation or church membership.

Nor does *Rixford, supra,* 214 Cal. 547, support a finding that the Secretary exceeded her ministerial authority by refusing to file the submitted articles for "Pastor of Santee Catholic Mission, a corporation sole." There, the petitioner sought a writ of mandate to compel the Secretary to file articles of incorporation under the name "California Shredded Foods Co., Ltd." (*Id.* at p. 548.) It was claimed that the name California Shredded Foods Co., Ltd. was likely to mislead the public because it too closely resembled the name "Shredded Wheat Company." (*Id.* at p. 551.) In concluding that the Secretary had exceeded his authority in refusing to file the articles under the name California Shredded Foods Co., Ltd. the Court of Appeal explained that the names

15

were "so widely dissimilar as to leave no room for the exercise of discretion or judgment on the part of [the Secretary] which would make it discretionary with him to ignore the existence of patent facts." (*Id.* at p. 555.) Here, the conflict between the proposed dissolution language and section 10015 likewise is so obvious as to leave no room for the exercise of discretion or judgment on the part of the Secretary to do anything other than refuse to file the submitted articles.

Plaintiffs' reliance on *People ex rel. Fund American Companies v. California Ins. Co.* (1974) 43 Cal.App.3d 423 likewise is misplaced. There, the Court of Appeal held that the Secretary "is required to reserve names of corporations meeting the requirements of the Corporations Code and has no discretion not to do so," and that the Secretary's administrative practice of deferring to prior name reservations or approvals of the Insurance Commissioner "was a violation of the mandatory provisions of [the] Corporations Code . . . and cannot be sustained upon a proper construction of the pertinent statutes." (*Id.* at pp. 429, 432.) The court found that the Secretary's practice of deferring to the Insurance Commissioner was "both outside the scope of his ministerial duties, and erroneous as a matter of law." (*Id.* at p. 433.) As detailed above, here, the Secretary acted well within the scope of her ministerial authority in refusing to file the submitted articles. (§ 10005.)

Finally, we reject plaintiffs' claim that the Secretary acted arbitrarily in refusing to file the submitted articles because she had previously filed articles containing dissolution provisions identical to that contained in the submitted articles. As previously discussed, the Secretary correctly determined that the proposed articles do not conform to section 10015, and thus, was duty bound to reject them. That she previously filed articles of incorporation containing the same conflicting language does not make her refusal to file the proposed articles arbitrary, particularly where, as here, there is no evidence that she filed articles containing the same conflict *after* refusing to file the proposal. To the contrary, the Secretary represents that the filing of the articles containing the same

16

conflicting language was an oversight, and that since the conflict was discovered, members of her staff now carefully review the dissolution provisions of all articles of incorporation for corporations sole to ensure they conform to law, including section 10015.

## DISPOSITION

The judgment entered in the Secretary's favor is affirmed.  The Secretary shall recover her costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


      BLEASE      , Acting P. J.


We concur:


      ROBIE      , J.


      DUARTE      , J.

17