[No. 12100.   Department One. — May 28, 1889.]

ROMAN CATHOLIC ARCHBISHOP OF SAN FRAN-
CISCO, RESPONDENT, v. C. G. SHIPMAN ET AL.,
APPELLANTS.

SOLE CORPORATION — TRUST — PARTIES — ENJOINING SALE FOR STREET
ASSESSMENT. — A sole corporation cannot enjoin a sale of land for a
street assessment upon the ground that it was not made a party to the
suit in which the decree of sale was obtained, if it is not the holder of
the legal title to the property, but is merely the beneficiary of a title
appearing of record in the individual name of the person constituting the
sole corporation, if such individual was made a party to the suit without
notice to the plaintiff therein of any title in the beneficiary, at the time
of the proceeding to enforce the street assessment.

ID. — TITLE BY ADVERSE POSSESSION — ROMAN CATHOLIC ARCHBISHOP —
TRUST — USE OF LAND FOR CHURCH PURPOSES. — No title can be acquired
by adverse possession of land by a party holding in hostility to himself;
nor can one holding in one capacity hold adversely to himself claim-
ing in another capacity. A sole corporation consisting of a Roman
Catholic archbishop cannot acquire title by adverse possession of land
of which the legal title is vested in him as a private individual, though
held in trust for the sole corporation. Possession by him must be referred
to the legal title; and the fact that funds contributed by Roman Catholics
were used in improving the property, and that it was used as a Roman
Catholic college, and for the purposes of the Roman Catholic Church,
cannot affect the legal title.

ID. — MANAGEMENT OF SOLE CORPORATION — POSSESSION OF LAND. — A sole
corporation has no need of a corporate seal, nor of a secretary or treas-
urer, nor of by-laws. His own will and judgment alone regulate his
acts, like any other individual acting in his own right. His possession
of land, when the title is in him as an individual, can in no way be dis-
tinguished from his holding thereof as a sole corporation, when the title
is in the corporation.

APPEAL from a judgment of the Superior Court of the
city and county of San Francisco, and from an order
denying a new trial.

The facts are stated in the opinion of the court.

*J. C. Bates*, for Appellant.

The trustee of the legal title was the only necessary
party to the suit foreclosing the assessment. (Civ. Code,
sec. 863; *Phelan* v. *Dunne*, 72 Cal. 229; Stats. 1871–72, p.

816, secs. 13, 17; *Eldridge* v. *See Yup Co.*, 17 Cal. 44; *Miner* v. *Pingree*, 110 Mass. 48; *Parker* v. *Baxter*, 2 Gray, 186; *Vance* v. *Corrigan*, 78 Mo. 96; *Mora* v. *Le Roy*, 58 Cal. 10; *Anson* v. *Townsend*, 73 Cal. 415; *Burling* v. *Tompkins*, 77 Cal. 257; *Withrell* v. *Courtland Wagon Co.*, 25 Fed. Rep. 372; Perry on Trusts, sec. 328.) The beneficiaries are bound by neglect of the trustee to defend. (*Robbins* v. *City of Chicago*, 4 Wall. 672; *Village of Port Jarvis* v. *First Nat. Bank*, 96 N. Y. 557; *Jackson* v. *Griswold*, 4 Hill, 530; *St. Louis* v. *Bissell*, 46 Mo. 157; *Gridley* v. *Jeauneaud*, 25 La. Ann. 634.) A person cannot deny the validity of the title under which he enters. (*Kimball* v. *Lohmas*, 31 Cal. 159; *Woolfolk* v. *Ashly*, 2 Met. (Ky.) 288; *Morris* v. *Shannon*, 12 Bush, 89; *Anderson* v. *Armstead*, 69 Ill. 452.) Presumably, Joseph S. Alemany held possession under the deed of his purchase, and there was no such possession as to even give constructive notice of a different title. (3 Wait's Actions and Defenses, 451; *Smith* v. *Yule*, 31 Cal. 180; 89 Am. Dec. 167; *Hawxhurst* v. *Lander*, 28 Cal. 333; *Havens* v. *Dale*, 18 Cal. 368; *Cook* v. *Travis*, 20 N. Y. 400; 37 N. Y. 636; *McCarthy* v. *Nicrosi*, 72 Ala. 332; *Burrows* v. *Holt*, 20 Conn. 459.)

*Wilson & Wilson*, for Respondent..

The sole corporation not being a party to the suit upon the street assessment, the judgment is void as to the corporation, and its property cannot be sold. (*Mayc* v. *Le Loy*, 32 Cal. 480; 91 Am. Dec. 595; *King* v. *Randlett*, 33 Cal. 322; *People* v. *Doe*, 31 Cal. 220; 36 Cal. 222; *Taylor* v. *Donner*, 31 Cal. 480; *San Francisco* v. *Doe*, 48 Cal. 561; *Hancock* v. *Bowman*, 49 Cal. 413; *Harney* v. *McLeran*, 66 Cal. 34.) The estate of a bare trustee of a dry legal title cannot be sold under execution so as to pass the rights of the beneficiary. (*Elliott* v. *Armstrong*, 2 Blackf. 208; *Bostick* v. *Keizer*, 4 J. J. Marsh. 600; 20 Am. Dec. 237; Hill on Trustees, 269, 273, 275; *Lounsbury* v. *Purdy*, 11 Barb. 490; *Beaver* v. *Filson*, 8 Pa. St. 334; *Osterman*

v. *Baldwin*, 6 Wall. 122.) The estate of the trustee ceased when the purposes of the trust ceased, and the beneficiary assumed control and use of the property. (Civ. Code, secs. 871, 2228, subd. 5.) In aid and protection of possessions of great length, all needed conveyances are presumed. (*Simon* v. *Eckstein*, 22 Cal. 591; 1 Phillips on Evidence, Cowen, Hill, and Edwards's Notes, 609; *Jackson* v. *McCall*, 10 Johns. 380, 377, and note; 6 Am. Dec. 343; *Ricard* v. *Williams*, 7 Wheat. 59; *Jackson etc.* v. *Porter*, 1 Paine, 459; 1 Greenl. Ev., Redfield's ed., sec. 46, p. 51; *Doe* v. *Sybourn*, 7 Term Rep. 2, per Lord Mansfield; *Doe* v. *Staples*, 2 Term Rep. 696.)

WORKS, J.—This is an action to enjoin the enforcement of a decree for the sale of certain real estate in the city of San Francisco for the satisfaction of a street assessment, upon the ground that the plaintiff was at the time the action was brought and the decree rendered the owner of the property, and not having been made a party to the suit, the judgment as against it was void.

There was a demurrer to the complaint, which was overruled, and upon a trial by the court, a perpetual injunction was decreed.

This is the second time the case has been to this court on appeal. At the former hearing it was reversed, on the ground that the complaint was insufficient. (*Archbishop of San Francisco* v. *Shipman*, 69 Cal. 586.) The complaint has been amended in such a way as to avoid the objections then urged against it, and, as amended, is sufficient, and the demurrer to it was properly overruled.

The only question necessary for us to consider arises upon the point made by the appellant, that the findings of the court below are not sustained by the evidence.

The respondent contends that there is but one question in the case, viz., whether the respondent was or was not the owner of the property in controversy at the time of and subsequent to the commencement of the

proceeding to foreclose the street-assessment lien.   This is undoubtedly true if this question of ownership be determined against the respondent.

The undisputed facts, as shown by the evidence, are these:—

Joseph S. Alemany was the Roman Catholic archbishop of San Francisco, and was, as such archbishop, a sole corporation.   The real estate mentioned in the complaint was, on the twenty-fifth day of July, 1858, conveyed to said Alemany, not as such archbishop, but in his individual name, by the then owner of the property; but the same was purchased by and paid for with moneys donated by members of the church.   The property was, subsequent thereto, improved by said corporation by the erection of buildings, fences, and other improvements, but the title thereto, so far as it appears of record, has remained in the individual name of said Alemany from the time of the execution of said conveyance to him until now.   The complaint alleges the ownership of the respondent in the property as follows: "And the plaintiff avers that the said land above particularly described was purchased by said Alemany for the use and benefit of the Roman Catholic Church of the diocese of San Francisco, and was paid for with the money of said church, and that afterward, and more than twenty years before the commencement of this action, said Alemany delivered the possession of said land and premises to this plaintiff, and then and there this plaintiff entered into and took the actual, peaceable, exclusive, open, and notorious possession and occupation of said tract of land above particularly described, under a claim of title exclusive of any other right, and has ever since that time been in and maintained the actual, open, notorious, peaceable, exclusive, continuous, and adverse possession and occupation of said land, and every part thereof, claiming to own and hold the same, and every part thereof, as its own under a claim of title in fee-simple

absolute, exclusive of any other right, and adversely to all the world, during all of which time said land was by the plaintiff fully protected by a substantial inclosure; and said plaintiff paid during all the time of such occupation as aforesaid, and continuously, all the taxes— state, city, and municipal—which were levied and assessed upon said land, or any part thereof."

The court below found this allegation of the complaint in favor of the respondent. There is no evidence tending to show that at the time of the proceedings to foreclose the street assessment the plaintiff therein had any notice that the respondent had or claimed any title or interest in the property, except as such notice might be inferred from the improvements made upon the property and the uses made of it. The learned counsel for the respondent has, by one or two admissions in his brief, very materially narrowed the controversy upon this point. He says: "Of course, if a title stood of record in a trustee, the *cestui que trust* could *not* attack a judgment duly rendered against the trustee without notice in the plaintiff of the interest of the beneficiary." Again: "In his brief the counsel goes to the extent of citing authorities to show that the deeds which were executed by the Bernals to J. S. Alemany vested legal title in him as an individual or person. With the last proposition we entirely agree, and think there can be no doubt that the deeds originally vested the title in the individual and natural person, J. S. Alemany, though the parol evidence showed him to be a trustee only."

We fully coincide with these views. Therefore, we take it as fully conceded,—1. That as a matter of record J. S. Alemany was the owner of the legal title to this property; 2. That it appears from the parol testimony in the case that he held the legal title as a trustee for the respondent; 3. That these facts alone would not entitle the plaintiff to enjoin the sale, but it must show that it had, subsequent to the deed, become the owner

of the legal title to the property, and that the appellants had notice of the fact at the time of the proceeding to enforce the street assessment.

The respondent claims that it has shown the legal title in it by adverse possession. The court below so found. The question is, therefore, whether or not this particular finding is supported by the evidence.

The evidence shows conclusively that the respondent was a sole corporation; that the corporation was Joseph S. Alemany, Roman Catholic archbishop of San Francisco; that as such archbishop, he purchased the property for and with the money of the church, but took the deed in his individual name; that as such archbishop he had and actually exercised exclusive control over said property as fully as if he were the sole and individual owner thereof; that all improvements made thereon, and use made of the same, were made at the instance of and used under the exclusive direction and control of said Alemany, as such archbishop, as fully and completely as if he were the sole and individual owner of the property. There is no evidence showing, or tending to show, that any overt act was done as constituting a change of possession from Joseph S. Alemany, individual, to Joseph S. Alemany, archbishop. It is true, improvements are shown to have been made, and made with the money of the church, but the improvements were made and the money expended by Joseph S. Alemany. The testimony of the archbishop shows this very clearly. After testifying fully to the improvements made upon the property, the use made of them, and that they were made with the money of the church, his examination proceeds:—

"Q. Has this corporation any secretary? A. Yes, sir; that is, not as such,—not one specifically, especially for that.

"Q. It does not have a seal? A. Yes, sir.

"Q. Have you any trustees? A. The sole corporation has no trustees.

"Q. You have been the sole manager of that corporation, I suppose, from beginning to end, have n't you? A. I may say yes; but of course I have to take advice; I have to consult; I have to guide myself a great deal with counsel."

Again, the following, from the testimony of one P. J. Gray, a witness for the respondent, is equally convincing on this point:—

"A. Well, I was president of the college for five years; I went there in 1863, and I stopped there till 1868.

"Q. What would you say with reference to the management and control of that property by the corporation? A. It was all under the archbishop; it was all managed by the archbishop; I was only representing him."

Does this evidence show adverse possession in the respondent, such as is required to confer title, and such as could constitute notice of a transfer of title from the individual Alemany, to Alemany, archbishop? We cannot think so.

To constitute the possession adverse, it must have been open, visible, notorious, and exclusive, *and must have been retained under a claim of right to hold against the owner, and in hostility to his title.* (*Thompson* v. *Felton,* 55 Cal. 547; *Unger* v. *Mooney,* 63 Cal. 586; 49 Am. Rep. 100.) Here the owner of the legal title, as it appeared of record, was in the actual possession of the property, and, as the sole corporation, he was the beneficiary under the deed conveying him the legal title, and as the respondent contends, he was also in possession as the adverse claimant, and holding in hostility to himself. So far as the title was concerned, he might have held it either as an individual or as the representative of the church, but the possession must have been by Joseph S. Alemany in person in either capacity, and his posses-

sion in one capacity could in no way be distinguished from his holding in the other.

"Where property vests in a bishop, parson, or other sole corporation, he holds it to his own use and benefit whilst he holds the office, and afterward the estate, and the enjoyment of it, go together to his successor when established. The transmission of the estate is perpetual, but the beneficial enjoyment changes at each succession." (*Overseers etc.* v. *Sears*, 22 Pick. 124; *Weston* v. *Hunt*, 2 Mass. 500.)

So he was equally entitled to the possession and control of the property, whether his holding was that of an absolute owner in his individual right or of a trustee under an absolute deed; and his right to the possession was precisely the same as if the deed had been made to him as the archbishop in his corporate capacity. (*Fitzpatrick* v. *Fitzgerald*, 13 Gray, 402; Perry on Trusts, secs. 321–328.) Such being the case, we cannot conceive of any theory upon which a title by adverse possession can be upheld under the circumstances of this case. One cannot hold in hostility to himself, nor can one holding in one capacity hold adversely to himself claiming in another capacity.

In the case of *Heiss* v. *Vosburg*, 59 Wis. 532, it was held that a priest being in charge of a church as the agent of the bishop, the possession of the building was, as a matter of law, in the bishop, although the congregation worshiped in the building, and paid the salary of the priest and the expense of keeping the property in repair and maintaining services, and although the committee of trustees aided the priest in the management of the temporalities of the church.

It must be presumed that Alemany held possession under the legal title vested in him by the deed; and as the undisputed evidence is that he continued in possession, there was no actual change of possession or control of the property that could amount to constructive no-

tice of any claim adverse to such title. (*Smith* v. *Yale*, 31 Cal. 180; 89 Am. Dec. 167; *McCarthy* v. *Nicrosi*, 72 Ala. 332; 47 Am. Rep. 418; 3 Wait's Actions and Defenses, 450; *Cook* v. *Travis*, 20 N. Y. 400; *Burrows* v. *Holt*, 20 Conn. 459, 463.)

.  The manner in which property is held and controlled by a sole corporation is well stated in *Overseers* v. *Sears*, 22 Pick. 128, in which it is said: "In all these respects the distinction between an aggregate and sole corporation growing out of their different modes of constitution and forms of action is striking and obvious.  A bishop or parson acting in a corporate capacity and holding property to him and his successor in right of his office has no need of a corporate name; he requires no peculiar seal; he performs all legal acts under his own seal, in his own name and name of office; his own will alone regulates his acts, and he has no occasion for a secretary, for he need not keep a record of his acts; no need of a treasurer, for he has no personal property, except the rents and proceeds of the corporate estate, and these he takes to his own use when received.  By-laws are unnecessary; for he regulates his own action by his own will and judgment, like any other individual acting in his own right."

It is claimed by the respondent that the use made of the property was sufficient to constitute adverse possession.  The evidence shows that there was erected on the property a large brick building, used as a college for the education of young men, chapel, dormitory, stables, and other out-buildings, and that these buildings were used as a college and for church purposes.  The construction of such buildings and the uses made of them were not necessarily inconsistent with private ownership, nor were they inconsistent with the trust under which. Alemany is claimed to have held originally; but if they were, the occupation and use of the buildings and property are thus shown to have been by individuals, pre-

sumably members of the Catholic church, and not by the plaintiff. Such individual members of the church could not, by any use they could make of the property, acquire any interest in it that could avail the respondent in this action

As we look at this evidence, it was wholly insufficient to sustain the finding that the respondent was the owner of the property, and for that reason the case must be reversed.

There are other questions raised and elaborately argued, but the question of ownership being the decisive one, we need not extend this opinion by taking up the other points discussed.

Judgment and order denying a new trial reversed, and cause remanded.

BEATTY, C. J., and PATERSON, J., concurred.

Hearing in Bank denied.