[Civ. No. 67587. Second Dist., Div. Six. July 26, 1983.]

COUNTY OF SAN LUIS OBISPO, Plaintiff and Appellant, v. DELMAR ASHURST et al., Defendants and Respondents.

COUNSEL

James B. Lindholm, Jr., County Counsel, and John Paul Daly, Deputy County Counsel, for Plaintiff and Appellant.

Raymond L. Girard for Defendants and Respondents.

---

**OPINION**

**GILBERT, J.**—Plaintiff County of San Luis Obispo (hereafter the County) appeals from a minute order of September 3, 1981, denying a writ of execution against real property allegedly owned by judgment debtors Delmar and Mollie Juanita Ashurst.

We conclude that the real property is not subject to execution sale to satisfy the obligations of the individual judgment debtors since title to the parcels of real property against which the County sought execution is held not by Delmar Ashurst or his wife, or both, but by the Office of the Presiding Apostle of Roandoak of God, a corporation sole.

In November 1975, the County filed a complaint in municipal court against the Ashursts for $2,428.02 for medical expenses incurred by Mollie Ashurst at San Luis Obispo County General Hospital. In January 1976, the County filed an amended complaint in which it alleged that Delmar and Mollie Ashurst were indebted to the County for medical services valued at $10,605.62. Delmar Ashurst admitted by answer that the services were rendered in the amount alleged but asserted that liability for payment rested with Medi-Cal. The matter was transferred to superior court on February 3, 1976.

On February 9, 1978, Delmar Ashurst filed articles of incorporation for "the Office of the Presiding Apostle of Roandoak of God, a corporation sole." By deeds recorded February 10, 1978, Delmar Ashurst transferred various parcels of real property to himself, the "Office of the Presiding Apostle of Roandoak of God, a corporation sole." On April 13, 1978, the articles were amended to change the name of the corporation sole to simply Roandoak of God.

On February 10, 1978, the County obtained an order for summary judgment against the individuals Delmar and Mollie Ashurst in the amount of $10,605.62 with 7 percent interest from October 4, 1975. The total judgment was $12,385.22 including interest as of that date. This judgment was filed November 1, 1978, and was later vacated for reasons not here relevant.

On May 23, 1979, the County filed an amendment to the amended complaint, increasing the amount of the damages because Mollie Ashurst had again been a hospital patient. In this complaint the County sought an addi-

tional $1,032.50 for services on August 31, 1978. The County alleged that on February 9, 1978, Delmar Ashurst transferred all of his personal assets to himself as a corporation sole for the purpose of defrauding his creditor, the County. On September 20, 1979, the County took the deposition of Delmar Ashurst and elicited information relating to the conveyances of real property and the organization and operation of the corporation sole. Delmar Ashurst admitted he is Roandoak of God.

On October 28, 1980, the court entered a money judgment in the sum of $11,538.12 jointly and severally against Delmar Ashurst and Mollie Juanita Ashurst pursuant to stipulation of the parties. No further proceedings were conducted and no ruling was made on the issue of fraud.

After judgment was entered, the County applied for a writ of execution against certain parcels of real property allegedly owned by the Ashursts. The writ was denied by the court on September 3, 1981. The County has appealed from the order denying the writ.

The County contends that the trial court erred in denying the writ on the basis that the title stood not in the name of the Ashursts as individuals but in the name of Roandoak of God, a corporation sole. It appears that the County's ground for alleging error is that despite the status of title Delmar Ashurst is the alter ego of Roandoak of God and the assets of that corporation are in fact the assets of the presiding officer.

The issue, as defined by the trial court, "is whether the assets of a corporation sole are the personal assets of its titular head, and thus subject to execution for his or her debts." The answer on the basis of legal authorities defining the corporation sole and its attributes must be, as the trial court concluded, an unequivocal "no."

 The corporation sole is a venerable creation of the common law of England and is well established under common law in California. (*Santillan* v. *Moses* (1850) 1 Cal. 92; *Archbishop* v. *Shipman* (1889) 79 Cal. 288 [21 P. 830].) California by statute has legitimized this tradition and regulates the formalities attendant upon the creation and continued existence of the corporation sole. (Corp. Code, § 10000 et seq.) One principal purpose of the corporation sole is to insure the continuation of ownership of property dedicated to the benefit of a religious organization which may be held in the name of its titular head. Title will not then be divested or passed to that person's heirs upon his death but will be retained for the benefit of the religious group and passed to the successors to his office.

The topic was covered by Blackstone who described the corporation sole as follows: "Corporations sole consist of one person only and his succes-

sors, in some particular station, who are incorporated by law, in order to give them some legal capacities and advantages, particularly that of perpetuity, which in their natural persons they could not have had. In this sense the king is a sole corporation; so is a bishop; so are some deans, and prebendaries, distinct from their several chapters; and so is every parson and vicar. And the necessity, or at least use, of this institution will be very apparent, if we consider the case of a parson of a church. At the original endowment of parish churches, the freehold of the church, the churchyard, the parsonage house, the glebe, and the tithes of the parish, were vested in the then parson by the bounty of the donor, as a temporal recompense to him for his spiritual care of the inhabitants, and with intent that the same emoluments should ever afterwards continue as a recompense for the same care. But how was this to be effected? The freehold was vested in the parson; and, if we suppose it vested in his natural capacity, on his death it might descend to his heir, and would be liable to his debts and encumbrances: or at best, the heir might be compellable, at some trouble and expense, to convey these rights to the succeeding incumbent. The law therefore has wisely ordained, that the parson, *quatenus* (as) parson, shall never die, any more than the king; by making him and his successors a corporation. By which means all the original rights of the parsonage are preserved entire to the successor; for the present incumbent, and his predecessor who lived seven centuries ago, are in law one and the same person; and what was given to the one was given to the other also." (1 Blackstone's Commentaries, ch. 18, pp. 469-470.)

▪ Under the authorities there is a severability of title and ownership as between the unincorporated religious organization and the individual officeholder as the corporation sole. (*Estate of Zabriskie* (1979) 96 Cal.App.3d 571, 576 [158 Cal.Rptr. 154].) There is also a clear distinction between the corporation sole and the individual who happens to be the current office holder. (*Archbishop* v. *Shipman, supra,* 79 Cal. 288.) Once title to real property vests in the office holder as corporation sole it passes not to his heirs but to the successors to his office by operation of law. (Corp. Code, § 10008.) The assets must remain with the religious organization thenceforth (Corp. Code, § 10015) and although the corporation sole may deal with the assets and contract in the same manner as a natural person, he does so only for the purposes of the trust (Corp. Code, § 10007). Since the corporation sole is the incorporation of the titular head or presiding officer of a religious organization, it operates without directors or members except the current holder of the office. (See, e.g., *Estate of Zabriskie, supra,* 96 Cal.App.3d at p. 576.)

▪ The County does not contest the validity of the creation of the corporation sole Roandoak of God by Delmar Ashurst and no defect therein is

apparent from the record. This being true, the possession of the real property by Delmar Ashurst is deemed to be the possession of the corporation sole. (*Archbishop* v. *Shipman, supra,* 79 Cal. 288.) The powers of the corporation sole to administer the property are extensive and almost unfettered except for the qualification that the property must be used for the purposes of the office. (Corp. Code, § 10007.)

The *Zabriskie* decision, *supra,* does not support the County's position that because Delmar Ashurst controls the corporation sole and its assets, the corporation and its property must be subject to his individual debts. In that case Zabriskie by will left property to Roandoak of God, an unincorporated Christian association, provided it incorporate as a nonprofit organization within 180 days. The appellate court concluded that Delmar Ashurst as head of the religious group was a corporation sole. This did not fulfill the criteria for incorporation of the association since the regulations pertaining to nonprofit corporations are quite separate and distinct.

Since the assets of the individual currently holding office, in this case Delmar Ashurst, are not the assets of the corporation sole, and vice versa, each is subject to separate accountability. The creditors of the corporation sole may not look to the assets of the individual holding office, nor may the creditors of the individual look to the assets held by the corporation sole.

Here, there was no showing that property was fraudulently conveyed to the corporation sole, or that the corporation sole improperly used the property against its beneficial interest. Therefore, the application for a writ of execution against the property to satisfy the individual debts of Delmar or Mollie Juanita Ashurst was properly denied.

### Disposition

The judgment (order) appealed from is affirmed.

Stone, P. J., and Abbe, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied October 27, 1983. Mosk, J., was of the opinion that the petition should be granted.