[No. B117060. Second Dist., Div. Three. Jan. 20, 1999.]

EUGENE R. BERRY, Plaintiff and Appellant, v.
SOCIETY OF SAINT PIUS X et al., Defendants and Respondents.

**COUNSEL**

Helms, Hanrahan & Myers and James R. Helms, Jr., for Plaintiff and Appellant.

O'Melveny & Myers, Seth Aronson and Paul G. McNamara for Defendants and Respondents.

**OPINION**

**KLEIN, P. J.**—Plaintiff and appellant Reverend Eugene R. Berry (Berry) appeals a judgment following a grant of summary judgment in an unlawful detainer action in favor of defendants and respondents Society of Saint Pius X (the Society), Reverend Peter Scott (Scott), Reverend Paul Tague (Tague) and Reverend Charles Ward (Ward) (collectively, defendants or the Society).

Berry claims he is entitled to possession of the disputed church properties and to oust defendants from the premises because he was duly appointed by his predecessor to serve as pastor of the subject religious entity, which holds title to its property as a corporation sole. (Corp. Code, §§ 10000-10015.)[1]

We conclude an amendment to the corporate articles giving an incumbent pastor the power to appoint a successor was invalid because the amendment

---

[1] As discussed in greater detail below, Corporations Code sections 10000 through 10015 authorize the formation of an entity known as a corporation sole for the purpose of managing the affairs and property of a religious organization.

All further statutory references are to the Corporations Code, unless otherwise indicated.

was not duly authorized by the "religious organization" governed by the corporation. (§ 10010.) Therefore, Berry's appointment was ineffective and Berry has no right to possession thereunder. As a result, the grant of summary judgment in favor of defendants was proper.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *Overview.*

The subject church real property consists of two church edifices and two residences. The underlying dispute among Berry, the defendant priests and the church parishioners, has to do with the internal governance of a church, the mode of succession to the office of pastor, and the right to control the church property. Berry was unable, within the confines of the church, to resolve these issues in his favor. Berry then sought the assistance of the civil courts by filing this unlawful detainer action to oust the defendant priests and to gain control over the church property.

As recognized by the trial court herein, courts are constitutionally barred from intervening in *property* disputes where the rights of the parties depend on questions of church dogma or doctrine. (*Gipe* v. *Superior Court* (1981) 124 Cal.App.3d 617, 628 [177 Cal.Rptr. 590].) Consequently, the trial court endeavored to resolve this matter within the narrow limits of "neutral principles of law." The governing neutral principles of law are found in the statutory scheme dealing with corporations sole in California, the instant articles of incorporation and amendments thereto, as well as in the pertinent case law, sparse though it may be.

### 2. *The formation of the corporation sole, amendments to corporate articles and the controversy over succession.*

The Saint Pius V Apostolate of California (Apostolate), an entity independent of the Los Angeles Archdiocese, practices Roman Catholicism as it existed before Vatican II. In 1976, Father Charles Donahue (Donahue), as pastor of the Apostolate, organized a corporation sole and filed articles of incorporation with the Secretary of State. Title to the Apostolate's real property was in the name of "Pastor, Saint Pius V Apostolate of California, a Corporation Sole." Thus, the individual who serves as pastor also holds the office of corporation sole.

Article VI of the original articles of incorporation provided that a vacancy in the office of the pastor would be filled by "appointment of the presiding Archbishop following the canons of the Roman Catholic Church."

In 1978, Donahue filed a certificate of amendment of the articles of incorporation with the Secretary of State. The document provided in relevant part: "Article VI is amended by striking out all of the present Article and inserting in lieu thereof the following language: [¶] 'The manner in which a vacancy occurring in the office of the Pastor is required by the rules of the . . . Apostolate . . . to be filled is as follows: By appointment of his Excellency, Archbishop Marcel Lefebvre, the Superior General of the Society of Saint Pius X, or his successor in that office as Superior General, following the canons of the Roman Catholic Church.' "

In 1983, Donahue filed another certificate of amendment, again amending Article VI. *The 1983 amendment is the focus of our inquiry.* In this certificate of amendment, Donahue "certifie[d]: '1. That he is Pastor, Saint Pius V Apostolate of California, a Corporation Sole, and sole incorporator. [¶] 2. *That he hereby adopts the following amendment of the Articles of Incorporation of said corporation, which have been duly authorized by the . . . Apostolate . . . .* [¶] A. Article VI is amended by striking out all of the present Article and inserting in lieu thereof the following language; [¶] The manner in which a vacancy occurring in the office of the Pastor is required by the rules of the . . . Apostolate . . . to be filled is as follows: [¶] A. *By written appointment made by the incumbent pastor during his tenure of office, . . .* ' " (Italics added.)

On June 1, 1987, Donahue allegedly executed a document "nominat[ing] and appoint[ing] Rev. Father Eugene Berry presently residing in Aurora, Colorado, in the event of my demise . . . as my successor as Pastor [of the] . . . [Apostolate] . . . , a Corporation Sole, . . ."[2]

On December 23, 1995, Donahue, the incumbent corporation sole, died.

The dispute arose the following year when Berry sought to take possession of the church properties. On September 10, 1996, Berry served defendants with a 30-day notice to quit. They refused to comply.

On September 22, 1996, the parishioners, by a vote of 135 to 6 purportedly adopted a bylaw providing that their pastor and corporation sole would be selected by majority vote.

---

[2]For purposes of this summary judgment, it is unnecessary to resolve the authenticity of the June 1, 1987, document appointing Berry as pastor. Assuming arguendo the document is authentic, which was disputed, the appointment of Berry is ineffective for the reasons discussed below.

On October 13, 1996, in a monitored election, the parishioners purportedly elected defendants their pastor and corporation sole by a vote of 102 to 1.[3]

Berry then commenced this "unlawful detainer" proceeding, seeking to oust the defendants.[4]

### 3. *The proceedings.*

On October 15, 1996, Berry filed a municipal court complaint for unlawful detainer and forcible detainer against the Society and the three individual priests, Fathers Scott, Tague and Ward. The complaint alleged Berry was entitled to possession of the properties and defendants had refused to vacate the premises after being served with a 30-day notice to quit. Berry sought an eviction and damages for the holdover period.

The defendants answered and asserted various affirmative defenses, including the fact that they had pending a complaint in the Los Angeles Superior Court seeking relief based on the same underlying facts. The matter subsequently was transferred to the superior court.

### a. *Denial of Berry's motion for summary judgment.*

On March 10, 1997, Berry filed a motion for summary judgment, contending he was the corporation sole pursuant to the written appointment by Donahue and therefore he was entitled to judgment for possession of the premises as a matter of law. For purposes of said motion, Berry waived his prayer for damages.

---

[3]The parties disagree as to the validity of the bylaw and the election. We need not, and do not, reach these issues.

[4]Between the onset of litigation and the entry of summary judgment, article VI was amended three more times:

On October 21, 1996, Scott filed an amendment as pastor and corporation sole of the Apostolate, replacing article VI with the following provision: "The manner in which a vacancy occurring in the office of the Pastor is to be filled, or any challenge to the legitimacy of the current Pastor is to be resolved, . . . is as follows: [¶] 1. A vote on the issue of who is or will be the rightful Pastor may be called by the written petition of thirty parishioners, . . ."

On December 13, 1996, Berry, also claiming the status of pastor and corporation sole, filed an amendment providing a vacancy in the office of pastor "is to be filled as follows: [¶] By written appointment made by the incumbent pastor, the Rev. Eugene R. Berry, during his tenure of office."

On April 10, 1997, Scott filed another amendment to the corporate articles. This amendment reiterated the language of his October 21, 1996, amendment, which provided for the filling of "a vacancy occurring in the office of the Pastor . . . or any challenge to the legitimacy of the current Pastor" to be resolved by a vote of the parishioners.

Berry asserted a court can entertain an action involving issues of ownership or control over church property as long as doctrinal matters are not considered. Berry's basic argument was that Donahue, as the corporation sole, had the power unilaterally to amend the articles of incorporation, and in fact, did so. Donahue's 1983 amendment gave the incumbent pastor the authority to name his successor. Berry contended that because Donahue named him as successor after properly amending the articles, Berry was entitled to possession of the church property.

The trial court denied Berry's motion on several grounds. It found, inter alia, the language of the crucial 1983 amendment was ambiguous as to whether the amendment was duly authorized, as required by section 10010. The trial court also took issue with Berry's claim that Donahue alone was the religious organization and that Donahue unilaterally had the power to adopt amendments to the articles of incorporation. In addition, the trial court found a triable issue of material fact with respect to the authenticity of the letter by which Berry claimed he was Donahue's successor.

   b.   *Defendants' summary judgment motion.*

On June 16, 1997, the defendants filed the instant motion for summary judgment. Defendants contended: The pastor and corporation sole of the Apostolate was Scott, and his delegates, the priests of the Society; Berry's claim to this position rested entirely upon the unauthenticated letter from Donahue; even if the letter were authentic, its validity depended upon the 1983 amendment to the articles filed by Donahue; because Donahue failed to obtain authorization to amend those articles, the amendment and the appointment letter were ineffective.

Thus, a key issue was the validity of the 1983 amendment. Section 10010 requires an amendment to the articles to contain a verified statement the amendment "has been duly authorized *by the religious organization* governed by the corporation." (Italics added.)

In opposing summary judgment, Berry again argued the 1983 amendment was duly authorized by *Donahue* because "Donahue himself was the 'underlying religious organization.' . . . There is no authority higher or lower than the Monsignor. . . . There is no evidence of any 'organization.' . . . People who attend church services are not an organization. That is a fluid and-ever changing group of people. They do not constitute an 'organization.' "

   c.   *Trial court's ruling granting defendants' summary judgment motion.*

On August 20, 1997, the trial court granted summary judgment for defendants.

The trial court set forth its rationale in an extensive, thoroughly researched and well-reasoned statement of decision, which provided in relevant part: "Berry argues that Msgr. Donahue alone was the 'religious organization,' and that he had the power unilaterally to adopt amendments to the articles of incorporation. Berry's interpretation of the Corporations Code, however, creates a statutory contradiction that cannot be reconciled. It requires that operative words in the clause 'duly authorized by the religious organization governed by the corporation' be rendered superfluous."

In finding the holder of the office of corporation sole is separate and distinct from the governed religious organization, the trial court cited section 10015, pertaining to disposition of assets upon dissolution. Section 10015 states the assets remaining after satisfaction of debts "shall be transferred to the religious organization governed by the corporation sole, or to trustees in its behalf, . . ." The trial court reasoned "[i]f Msgr. Donahue, and only Msgr. Donahue, is the religion organization as Berry asserts, then Msgr. Donahue would receive the remaining assets on dissolution. This is plainly not a result contemplated by the statute. Indeed, such a result runs counter to the intent of the corporation sole statutes as a whole."

Thus, the trial court determined Donahue standing alone was not the "religious organization" and therefore Donahue lacked the power unilaterally to amend the articles of incorporation; the 1983 amendment, purporting to give the incumbent pastor the power to appoint his successor, was ineffective because it was not duly authorized by the religious organization as required by section 10010; therefore, Donahue's purported appointment of Berry as his successor likewise was ineffective. Consequently, Berry could not maintain an unlawful detainer action to oust defendants from the premises.[5]

Berry filed a timely notice of appeal from the judgment.

## CONTENTIONS

Berry contends that acting as the legitimate corporation sole, he has the right, if not the obligation, to evict the defendant priests by the application of neutral principles of law. He further avers that because the Apostolate is not a majority-ruled congregational church but an independent organization self-governed by the corporation sole, the defendants have no right to remain in the property based upon an ineffectual vote of the congregation.

---

[5]The trial court noted it "need not, and does not, test the validity of the new bylaw [providing for the pastor to be selected by majority vote] or the results of the election conducted under it in deciding this motion for summary judgment."

Defendants, in turn, reiterate that Donahue's 1983 amendment, giving the incumbent pastor the power to appoint a successor, was ineffective because it was not duly authorized by the governed "religious organization," and therefore Berry has no right of possession pursuant to his alleged written appointment by Donahue.

DISCUSSION

1. *Instant unlawful detainer action more appropriately denominated one for declaratory relief.*

■ As a threshold matter, we note an unlawful detainer action "is a summary proceeding, the primary purpose of which is to obtain the possession of real property in the situations specified by statute. [Citations.] . . . [Citation.] The sole issue before the court is the right to possession; . . ." (*Vasey* v. *California Dance Co.* (1977) 70 Cal.App.3d 742, 746-747 [139 Cal.Rptr. 72].) With certain exception, "title cannot be tried in an unlawful detainer action." (*Greenhut* v. *Wooden* (1982) 129 Cal.App.3d 64, 69 [180 Cal.Rptr. 786].)

"The procedure in unlawful detainer is covered in [Code of Civil Procedure section] 1161 et seq. The remedy, as broadened by statutory changes, is available in three situations: [¶] (a) *Landlord* against tenant for unlawfully holding over or for breach of the lease (the traditional and most important proceeding). ([Code Civ. Proc., §] 1161; . . .) [¶] (b) *Owner* against servant, employee, agent, or licensee, whose relationship has terminated. ([Code Civ. Proc., §] 1161(1); . . .) [¶] (c) *Purchaser* at sale under execution, foreclosure, or power of sale in mortgage or deed of trust, against former owner and possessor. ([Code Civ. Proc., §] 1161a; . . .)" (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 599, p. 69.) The statutory situations in which the remedy of unlawful detainer is available are exclusive and the statutory procedure must be strictly followed. (*Greene* v. *Municipal Court* (1975) 51 Cal.App.3d 446, 450 [124 Cal.Rptr. 139]; *Briggs* v. *Electronic Memories & Magnetics Corp.* (1975) 53 Cal.App.3d 900, 905 [126 Cal.Rptr. 34]; *De La Vara* v. *Municipal Court* (1979) 98 Cal.App.3d 638, 640 [159 Cal.Rptr. 648].)

Although denominated an action for unlawful detainer, Berry's action to oust defendants and obtain possession of the church property did not fall within any of the above situations. Berry's action, involving the validity of certain instruments, namely, Donahue's 1983 amendment to the corporate articles and Donahue's purported appointment of Berry as his successor, presented an actual controversy between the parties concerning the church

property and thus is more properly denominated as one sounding in declaratory relief. (Code Civ. Proc., § 1060.)[6] Nonetheless, at this juncture any defect in this regard is harmless. The issues were fully litigated and as discussed below, the trial court's resolution of the pertinent issues was correct.[7]

2. *Church property disputes may be adjudicated in civil courts without inquiry into doctrinal matters by applying neutral principles of law.*

Civil courts have general authority to resolve questions regarding the right to possession of church property. (*Jones* v. *Wolf* (1979) 443 U.S. 595, 602 [99 S.Ct. 3020, 3025, 61 L.Ed.2d 775].) "The State has an obvious and legitimate interest in the peaceful resolution of property disputes, and in providing a civil forum where [such issues] can be determined conclusively." (*Ibid.*) Consistent therewith, the relevant statutory scheme specifies a corporation sole may "[s]ue and be sued, and defend, in all courts and places, in all matters and proceedings whatever." (§ 10007, subd. (a).)

With respect to the resolution of such disputes, the free exercise clause of the First Amendment to the United States Constitution and its California counterpart (Cal. Const., art. I, § 4) precludes civil courts from adjudicating church property disputes on the basis of religious doctrine and practice. (*Jones* v. *Wolf, supra,* 443 U.S. at p. 602 [99 S.Ct. at p. 3025]; *Gipe* v. *Superior Court, supra,* 124 Cal.App.3d at pp. 627-628.)

" 'However, when the dispute to be resolved is essentially ownership or right to possession of property, the civil courts appropriately adjudicate the controversy even though it may arise out of a dispute over doctrine or other

[6]Code of Civil Procedure section 1060, providing for declaratory relief, states in relevant part: "Any person interested under a written instrument, . . . or who desires a declaration of his or her rights or duties with respect to another, *or in respect to, in, over or upon property,* . . . *may, in cases of actual controversy relating to the legal rights and duties of the respective parties,* bring an original action . . . for a declaration of his or her rights and duties in the premises, including a determination of any question of construction or validity arising under the instrument or contract. He or she may ask for a declaration of rights or duties, either alone or with other relief; and the court may make a binding declaration of these rights or duties, . . ." (Italics added.)

[7]We also note in addition to being limited to the statutory situations, unlawful detainer is intended to afford an *expeditious* remedy for obtaining possession of premises wrongfully withheld. (*Childs* v. *Eltinge* (1973) 29 Cal.App.3d 843, 853 [105 Cal.Rptr. 864].) The instant case, involving complex questions of internal church governance and Berry's right to succession under a purported appointment by his predecessor, took nearly one year to resolve in the trial court. The litigation spawned two motions for summary judgment and generated two lengthy statements of decision. While we sympathize with Berry's attempt to find a neutral forum to adjudicate his claims, the summary remedy of an unlawful detainer action was not the proper vehicle to litigate this matter.

ecclesiastical question, provided the court can resolve the property dispute without attempting to resolve the underlying ecclesiastical controversy. [Citations.]' " (*Gipe* v. *Superior Court, supra,* 124 Cal.App.3d at p. 628.) Such disputes may be adjudicated by resort to neutral principles of law. (*Jones* v. *Wolf, supra,* 443 U.S. at p. 602 [99 S.Ct. at p. 3025].) This approach requires analysis of the language of instruments such as deeds, church charters, state statutes governing the holding of church property, and provisions in a church constitution pertaining to ownership and control of church property (*id.,* at p. 603 [99 S.Ct. at p. 3025]), and here, amendments to articles of incorporation. However, "[i]n undertaking such an examination, a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts . . . ." (*Id.,* at p. 604 [99 S.Ct. at p. 3026].)

Berry's unlawful detainer action puts in issue his right to possession of church property. In resolving the dispute, the trial court did not become entangled in doctrinal differences. Berry's claim of right to possession is based on his alleged written appointment by Donahue pursuant to the 1983 amendment. This matter was decided by the trial court on the basis of the text of the articles of incorporation and amendments thereto, and by evaluating whether the 1983 amendment complies with the statutory scheme governing corporations sole, as that is how the Apostolate has chosen to hold title to its California real property. Likewise, this court may perform its reviewing function without doctrinal entanglement.

3. *Standard of appellate review.*

■ As stated in *PMC, Inc.* v. *Saban Entertainment, Inc.* (1996) 45 Cal.App.4th 579, 590 [52 Cal.Rptr.2d 877], summary judgment "motions are to expedite litigation and eliminate needless trials. [Citation.] They are granted 'if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' [Citations.]"[8]

A defendant meets its burden upon such a motion if it negates an essential element of the plaintiff's case, or establishes a complete defense, or if it demonstrates the absence of evidence to support the plaintiff's case. Once the moving defendant has met its initial burden, the burden shifts to the plaintiff to show that a triable issue of one or more material facts exists. (*PMC, Inc.* v. *Saban Entertainment Inc., supra,* 45 Cal.App.4th at p. 590;

---

[8]In an action for declaratory relief, summary judgment may be had when a party is entitled to judgment as a matter of law. (*Montrose Chemical Corp.* v. *Superior Court* (1993) 6 Cal.4th 287, 301 [24 Cal.Rptr.2d 467, 861 P.2d 1153].)

*Leslie G.* v. *Perry & Associates* (1996) 43 Cal.App.4th 472, 482 [50 Cal.Rptr.2d 785].)

Defendants moved for summary judgment on the ground Berry had no right to possession because Donahue's 1983 amendment was unauthorized, so as to render Donahue's appointment of Berry ineffective. The trial court resolved that issue as a matter of law, finding the 1983 amendment had not been duly authorized by the religious organization in accordance with section 10010. As explained, the trial court's analysis was correct.

4.    *General principles re corporations sole; sections 10000 to 10015.*

■   The civil law has long provided for the protection and preservation of the property of religious organizations by means of the entity known as a corporation sole. The corporation sole "is a venerable creation of the common law of England and is well established under common law in California. [Citations.]" (*County of San Luis Obispo* v. *Ashurst* (1983) 146 Cal.App.3d 380, 383 [194 Cal.Rptr. 5], hg. den.)

California by statute "has legitimized this tradition and regulates the formalities attendant upon the creation and continued existence of the corporation sole." (*County of San Luis Obispo* v. *Ashurst, supra,* 146 Cal.App.3d at p. 383.) Its history in California goes back over 100 years; former section 602 of the Civil Code, relating to corporations sole, was adopted in 1878. (24A West's Ann. Corp. Code (1991 ed.) code Com. notes foll. § 10000, p. 95.) In 1947, the corporations sole law was recodified in the Corporations Code, at sections 10000 to 10015, and it has remained essentially unchanged since that time.

The statutory scheme is somewhat sparse. Section 10002 states a corporation sole may be formed "by the bishop, chief priest, presiding elder, or other presiding officer of any religious denomination, society, or church, for the purpose of administering and managing the affairs, property, and temporalities thereof." The next few sections pertain to the contents of the articles of incorporation, and their execution and filing. (§§ 10003, 10004, 10005.) Section 10007 sets forth the powers of a corporation sole, which can sue and be sued, enter into contracts, borrow money, deal in real and personal property and receive bequests and devises. Section 10008 provides a corporation sole has perpetual existence and continuity of existence, "notwithstanding vacancies in the incumbency thereof." Section 10009 allows for judicial access to the corporate books. Section 10010 sets forth the prerequisites for changing the manner of filling any vacancy in the office of corporation sole. Of particular significance here is the provision of section

10010 that "[t]he chief officer of the corporation shall sign and verify a statement setting forth the provisions of the amendment and stating that it has been duly authorized *by the religious organization* governed by the corporation." (Italics added.) Sections 10012 through 10014 enable voluntary dissolution by means of filing a declaration of dissolution. Lastly, section 10015 provides for disposition of the corporate assets upon dissolution.

Despite the long-standing existence of corporations sole, case law on the subject is scarce, with only a few published cases in California.[9]

   a.   *Principal purpose of corporation sole.*

"One principal purpose of the corporation sole is to insure the continuation of ownership of property dedicated to the benefit of a religious organization which may be held in the name of its titular head." (*County of San Luis Obispo* v. *Ashurst, supra,* 146 Cal.App.3d at p. 383.) The topic was covered by "Blackstone who described the corporation sole as follows: 'Corporations sole consist of one person only and his successors, in some particular station, who are incorporated by law, in order to give them some legal capacities and advantages, particularly that of perpetuity, which in their natural persons they could not have had. In this sense the king is a sole corporation; so is a bishop; so are some deans, and prebendaries, distinct from their several chapters; and so is every parson and vicar. And the necessity, or at least use, of this institution will be very apparent, if we consider the case of a parson of a church. At the original endowment of parish churches, the freehold of the church, the churchyard, the parsonage house, the glebe, and the tithes of the parish, were vested in the then parson by the bounty of the donor, as a temporal recompense to him for his spiritual care of the inhabitants, and with intent that the same emoluments should ever afterwards *continue as a recompense for the same care.* But how was this to be effected? The freehold was vested in the parson; and, if we suppose it vested in his natural capacity, on his death it might descend to his heir, and would be liable to his debts and encumbrances: or at best, the heir might be compellable, at some trouble and expense, to convey these rights to the succeeding incumbent. The law therefore has wisely ordained, that the parson, *quatenus* (as) parson, shall never die, any more than the king; by making him and his successors a corporation. By which means all the

_____

[9]Berry's papers in support of his motion for summary judgment included a letter from Bill Holden, who worked as an attorney for over 25 years in the corporate division of the California Secretary of State. The letter indicates "[o]f the hundreds of thousands of good standing corporations, less than 500 are of the corporation sole type, which explains the virtual absence of case authority, law review discussion, or legal specialization."

original rights of the parsonage are preserved entire to the successor; for the present incumbent, and his predecessor who lived seven centuries ago, are in law one and the same person; and what was given to the one was given to the other also.' (1 Blackstone's Commentaries, ch. 18, pp. 469-470.)" (*County of San Luis Obispo, supra,* 146 Cal.App.3d at pp. 383-384.)

   b.   *Corporation sole and religious organization not identical.*

Under the authorities "there is a severability of title and ownership as between the unincorporated religious organization and the individual office-holder as the corporation sole. [Citation.] There is also a clear distinction between the corporation sole and the individual who happens to be the current office holder. [Citation.] . . . The assets must remain with the religious organization [rather than passing to the officeholder's heirs] (Corp. Code, § 10015) and although the corporation sole may deal with the assets and contract in the same manner as a natural person, he does so only for the purposes of the trust (Corp. Code, § 10007)." (*County of San Luis Obispo* v. *Ashurst, supra,* 146 Cal.App.3d at p. 384.)

5.   *Section 10010 requires amendment to articles to be duly authorized by the religion organization governed by the corporation, i.e. a body distinct from the holder of the office of corporation sole; Donahue's unilateral 1983 amendment was ineffective for lack of such authorization.*

   a.   *Berry's contention that Donahue duly authorized the 1983 amendment.*

Berry's claim that he is entitled to possession as pastor and corporation sole turns on the validity of the 1983 amendment and his subsequent appointment by Donahue.

As indicated, section 10010 states in relevant part: "The chief officer of a corporation sole may at any time amend the articles of incorporation of the corporation changing . . . the manner [of] filing any vacancy in the office thereof, . . . [¶] The chief officer of the corporation shall sign and verify a statement setting forth the provisions of the amendment *and stating that it has been duly authorized by the religious organization governed by the corporation.*" (Italics added.)

In the 1983 amendment, Donahue "certifie[d]: '1. That he is Pastor, Saint Pius V Apostolate of California, a Corporation Sole, and sole incorporator. [¶] 2. *That he hereby adopts the following amendment of the Articles of Incorporation of said corporation, which have been duly authorized by the*

. . . *Apostolate* . . . . [¶] A. Article VI is amended [as follows]: [¶] The manner in which a vacancy occurring in the office of the Pastor is required by the rules of the . ·. . Apostolate . . . to be filled is as follows: [¶] A. *By written appointment made by the incumbent pastor during his tenure of office,* . . .' " (Italics added.)

    b.  *Lack of verified statement that amendment was duly authorized is sufficient grounds to invalidate 1983 amendment.*

█ As an initial matter, it appears the language in the 1983 certificate of amendment failed to comply with section 10010. The statute requires the filing of the amendment to include a verified statement the *amendment* has been duly authorized by the religious organization. (§ 10010.) Here, however, Donahue certified he "adopts the following amendment of the *Articles of Incorporation* of said corporation, which *have* been duly authorized by the . . . Apostolate." (Italics added.) Read literally, this language only certifies that the articles of incorporation were duly authorized and not that the *amendment* was duly authorized, as required by section 10010.[10]

However, even assuming the filing by Donahue were construed as certifying the *amendment* had been duly authorized by the religious organization, the amendment is ineffective for the additional reasons stated below.

    c.  *Donahue standing alone could not constitute the governed religious organization and therefore the purported authorization by Donahue only was ineffective.*

█ As indicated, section 10010 requires the amendment be "duly authorized by the religious organization governed by the corporation." Berry attempts to bring this fact situation within the statute by arguing Donahue himself was the underlying religious organization and therefore Donahue duly authorized the 1983 amendment giving the incumbent pastor the power to appoint his successor. Berry dismisses the very existence of a religious organization other than Donahue, arguing "[t]here is no evidence of any

---

[10]The trial court noted this "significant drafting ambiguity" on the face of the amendment, and found it created a triable issue of material fact as a ground for denial of *Berry's* summary judgment motion.

'organization.' . . . People who attend church services are not an organization. That is a fluid and-ever changing group of people. They do not constitute an 'organization.' "[11]

However, Berry fails to cite any neutral principles of law to support his theory the chief officer of the corporation sole is also the "religious organization governed by the corporation" (§ 10010), and that therefore Donahue, as both the corporation sole and the governed religion organization, duly authorized the 1983 amendment.

In its statement of decision granting summary judgment for defendants, the trial court dealt with this issue in an analysis this court cannot improve upon, and we therefore summarize its reasoning as follows: Berry argues that Donahue alone was the "religious organization," and that Donahue had the power unilaterally to adopt amendments to the articles of incorporation. Berry's interpretation, however, is at odds with the statutory scheme and would require that operative words in the clause "duly authorized by the religious organization governed by the corporation" (§ 10010) be rendered superfluous. Of particular significance is section 10015, which requires that upon corporate dissolution, any remaining assets "shall be transferred to the religious organization governed by the corporation sole, or to trustees in its behalf, or disposed of as may be decreed by the superior court . . . ." If Donahue, the holder of the office of corporation sole, were synonymous with the religious organization governed by the corporation, upon dissolution the corporate assets would be distributed to Donahue. Such an interpretation is utterly at odds with the purpose of the corporation sole, which is to ensure "the continuation of ownership of property dedicated to the benefit of a religious organization which may be held in the name of its titular head." (*County of San Luis Obispo* v. *Ashurst, supra,* 146 Cal.App.3d at p. 383.) Once title "to real property vests in the office holder as corporation sole it passes not to his heirs but to the successors to his office by operation of law." (*Id.,* at p. 384.)

Thus, the trial court reasoned, "[c]ontrary to Berry's construction, the statutory scheme does not create a structure in which the 'corporation sole' and the 'religious organization' are by definition one [and] the same. Language requiring that incorporation be 'duly authorized by the religious

---

[11]Berry also resorts to "Catholic tradition" in arguing the Apostolate placed all governing power in the pastor and corporation sole; the Apostolate was not a majority-ruled congregational church; and that in a hierarchical church, such as the Roman Catholic Church, all decisionmaking authority is vested in the hierarchy, here, the corporation sole. Berry also cited to Donahue's preachings to establish the hierarchical structure of the church: "But I'll clue you in; none of you can fire me. Because you haven't appointed me. This is the beautiful thing about the Catholic Church; the people don't [choose], it is Christ who chooses. As he reminds us as priests; 'You have not chosen Me, but I have chosen you.' "

organization governed by the corporation' proves the point. The Legislature, even in a moment of extreme oversight, would not repeatedly use two very different terms in such close proximity to describe exactly the same entity. The legislative intent here must have been to refer to different entities having different roles in the establishment and governance of the church and its properties. [¶] The two entities contemplated by the statutes are the unincorporated church organization, over which the civil law generally has no jurisdiction, and the entity that finds its existence in the civil law - the corporation sole. This view finds support in the few reported cases dealing with the statutes at issue. In *County of San Luis Obispo, supra,* the question was whether the assets of a corporation sole could be [used] to satisfy the debts of its titular head - the pastor. The Court of Appeal answered the question with a negative and observed: [¶] Under the authorities there is a severability of title and ownership as between the unincorporated religious organization and the individual officeholder as the corporation sole . . . . The assets must remain with the religious organization . . . and although the corporation sole may deal with the assets and contract in the same manner as a natural person, he does so only for the purposes of the trust. [(*County of San Luis Obispo* v. *Ashurst, supra,* 146 Cal.App.3d at p. 384.)] [¶] The duly authorized office holder of a corporation sole may have enormous authority in the day-to-day affairs of the church, depending on how the religious organization chooses to govern itself. But, the statutory requirement of separate authorization in forming, amending the articles of incorporation, and winding up the corporation sole remain firm. No person, pastor or lay, may on his or her own authority, form, materially alter, or abolish a corporation sole without consent of the governed religious organization. [¶] The statutory interpretation advanced by Berry, giving the office holder absolute control of succession without consent or ratification of the governed religious organization, is *contra* to any reasonable interpretation of the statutes involved. [Berry's] assertions may comport with church tradition, but church tradition cannot govern civil statutory interpretation. Such is the separation between church and state. The civil law simply does not grant to a pastor the absolute powers that may inure under applicable religious canons. [¶] [E]ven if Berry were found to be the Corporation Sole, he does not also comprise the underlying religious organization contemplated by the California Corporations Code."

Further, Berry's argument denying the existence of a religious organiza-tion apart from the holder of the office of corporation sole overlooks the relationship of the corporation to the congregation or church membership. As the trial court observed, in the early case of *Wheelock* v. *First Presb. Church* (1897) 119 Cal. 477, 483 [51 P. 841] (although not involving a corporation sole) the Supreme Court explained the relationship of a religious

corporation to the congregation or church membership as follows: "The . . . Code of this state . . . expressly permits religious bodies to incorporate, but such incorporation is only permitted as a convenience to assist in the conduct of the temporalities of the church. *Notwithstanding incorporation the ecclesiastical body is still all important.* The corporation is a subordinate factor in the life and purposes of the church proper. A religious corporation . . . is something peculiar to itself. Its function and object is to stand in the capacity of an agent holding the title to the property, with power to manage and control the same in accordance with the interest of the spiritual ends of the church. . . . 'The legislature never means by granting or allowing such charters to change the ecclesiastical status of the congregation, but only to afford them a more advantageous civil status. The directors or trustees of the corporation, as such, have no authority whatever over church affairs. These matters rest purely with the ecclesiastical body. Whatever property stands in its name is seised to the use of the church proper. It is a trustee holding property for the use and enjoyment of the church, and every member of the church is a beneficiary of that trust.' " (Italics added.)

Thus, as recognized in California over a century ago, a religious organization of church members or congregants coexists with the corporate entity. Therefore, Donahue's formation of a corporation sole did not supersede the underlying religious organization. Rather, the statutory scheme pertaining to corporations sole contemplates the continued existence of an underlying religious organization, and requires the governed religious organization to authorize an amendment to the corporate articles changing the manner of filling a vacancy in the office of corporation sole. (§ 10010.)

Because Donahue alone was not the "religious organization governed by the corporation," the 1983 amendment was not duly authorized in accordance with section 10010 and was ineffective, as was Donahue's subsequent appointment of Berry as his successor. Berry has no right of possession pursuant to that appointment, entitling defendants to summary judgment.

   d.   *Manner in which religious organization must authorize amendment is a matter for the religious organization.*

In holding section 10010 requires an amendment to the corporate articles be duly authorized by the governed religious organization, the trial court did not indicate how that was to be accomplished. We agree with its approach to the issue. There is no requirement the authorization be achieved by a democratic vote of the congregation as opposed to some other means.

As the trial court observed, specifying how authorization must be given would likely offend the constitutional prohibition against governmental

intrusion into the internal organization, procedures and rules of religious organizations. (See, e.g., *Kedroff* v. *St. Nicholas Cathedral* (1952) 344 U.S. 94, 107-108 [73 S.Ct. 143, 150, 97 L.Ed. 120] [free exercise clause gives religious organizations the exclusive power to decide matters of internal church administration].) It is not the province of the civil courts to dictate the manner by which church authorization is given or obtained, but only to ensure that an authorization occurred in whatever manner was practiced by the religious organization involved.

We express no opinion as to how the instant religious organization may authorize an amendment to the corporate articles pursuant to section 10010. We simply hold that because Donahue by definition was not also the governed religious organization, the amendment he filed in 1983 was not duly authorized by the governed religious organization as required by section 10010.

## CONCLUSION

The civil law provides for a corporation sole as a means of preserving the property of a religious organization. The act of incorporating as a corporation sole in California is purely voluntary and such a decision voluntarily subjects the corporation sole to the long-standing pertinent legislation.

Under the statutory scheme, the power of the chief officer of a corporation sole is not unlimited. An amendment to the corporate articles filed by the chief officer, changing the manner of filling a vacancy in the office of corporation sole, must be duly authorized "by the religious organization governed by the corporation." (§ 10010.) Thus, the statute plainly contemplates the existence of a religious organization apart from the individual holding the office of corporation sole.

Guided by neutral principles of law, we conclude Donahue standing alone did not constitute the governed religious organization and therefore his 1983 amendment to the corporate articles was unauthorized and invalid. Consequently, Donahue's written appointment of Berry as his successor is ineffective and Berry has no right of possession under said appointment.

We express no opinion as to the initial incorporation by Donahue, the validity of any other amendments to the articles, the bylaw adopted by the parishioners in 1996, the subsequent election results, or any other issues.

## DISPOSITION

The judgment is affirmed. Each party to bear respective costs on appeal.

Kitching, J., and Aldrich, J., concurred.

A petition for a rehearing was denied February 10, 1999, and appellant's petition for review by the Supreme Court was denied April 14, 1999.